## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| URSULA NEWELL-DAVIS, *et al.*, | CIVIL ACTION NO. |
| Plaintiffs, | 2:21-CV-00049-NJB-JVM |
| v. | JUDGE NANNETTE JOLIVETTE BROWN |
| COURTNEY N. PHILLIPS, *et al.*, | MAGISTRATE JUDGE JANIS VAN MEERVELD |
| Defendants. | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Ursula Newell-Davis and Sivad Home and Community Services, LLC, filed a complaint in this Court against a collection of officials from the Louisiana Department of Health (LDH). The complaint challenges the constitutionality of a Louisiana statute and its implementing regulations—which require applicants who desire a license to provide "home and community-based services" to first undergo "Facility Need Review" (FNR). *See* La. Rev. Stat. 40:2116; La. Admin. Code tit. 48, §§ 12503(C)(2), 12523 *et seq*.

Plaintiffs claim that the FNR provisions have no rational basis. Plaintiffs bring facial and as-applied challenges to the FNR provisions under the Fourteenth Amendment and the Due Process and Equal Protection provisions of the Louisiana Constitution.

Because the FNR program furthers the State's legitimate interest in consumer

protection, the laws plainly have a rational basis. Plaintiffs have failed to allege any plausible legal challenge, and so Defendants move the Court to dismiss the complaint under Rule 12(b)(6).

## FACTUAL BACKGROUND

### A. Plaintiffs

Plaintiff Ursula Newell-Davis alleges that she is "a mother, experienced social worker, and entrepreneur." Compl. 1 ¶ 1. She founded Plaintiff Sivad Home and Community Services, LLC, "to provide safe and affordable respite care for special needs children and their families." *Id.* Plaintiffs also wish to provide "supervised independent living services" (SIL services). *See* Compl. 9 ¶ 38. Plaintiffs claim they are equipped to offer "temporary relief for parents of special needs children or parents of children with mental health challenges." *Id.* 2 ¶ 2.

### B. The Home and Community-based Services Licensing Regime

Because of the importance of respite and SIL services—and because of the vulnerability of the people who depend upon them—Louisiana law heavily regulates the providers of such services. Unlike those who provide "sitter" or "housekeeping" services, an provider of respite and SIL services must obtain a license from LDH and satisfy the "minimum licensing standards for home and community-based services (HCBS) providers." La. Admin. Code tit. 48, §§ 5001(A), (C)(4), (C)(6), (D)(1)(b)–(c).

The HCBS licensing standards are demanding. As an initial matter, an applicant must satisfy a criminal background check, demonstrate "financial viability," and maintain professional liability insurance and worker's compensation

insurance. La. Admin. Code tit. 48, § 5007(B). Applicants must also "attend a mandatory HCBS provider training class or complete the LDH online provider training." *Id.* § 5007(E).

Additionally, "[p]roviders applying for the Respite Care module under the HCBS license" must satisfy additional "applicable module specific requirements." *Id.* § 5083. Louisiana law provides detailed directions that respite service providers must comply with. *See*, *e.g.*, *id.* §§ 5083 (listing requirements for those who provide "in-home respite care"), 5087 (listing requirements for those who provide "center-based respite care"). The same is true for SIL service providers. *See id.* §§ 5093–95.

Once licensed, HCBS providers must ensure that any "client receives the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being of the client." *Id.* § 5039. Providers must develop a "quality enhancement plan." *Id.* § 5061. This includes, among other things, creating "a process for identifying on a quarterly basis the risk factors that affect or may affect the health, safety and/or welfare of the clients of the HCBS provider receiving services." *Id.* § 5061(B)(1). HCBS providers must also "ensure that each client has a documented individual plan in preparation for, and response to, emergencies and disasters." *Id.* § 5063(B).

## C. LDH's Administration of the HCBS Licensing Regime

Licensing and regulating HCBS providers is a resource-intensive process for LDH. After a provider submits its application for an HCBS license, LDH must conduct "an initial on-site licensing survey" to "ensure compliance with the licensing

laws and standards." *Id.* § 5009. If the provider is compliant with the laws, LDH issues a "full initial license." *Id.* §§ 5009–11.

Even after a provider receives a license, LDH is authorized to "conduct periodic licensing surveys and other surveys, including investigations of complaints, as deemed necessary to ensure compliance with all laws, rules and regulations governing HCBS providers and to ensure client health, safety and welfare." *Id.* § 5017. And "[a] follow-up survey may be conducted for any survey where deficiencies have been cited." *Id.*

According to Cecile Castello, Director of the Health Standards Section of LDH,[1] there are now approximately 600 licensed HCBS providers in the State. Castello Decl. ¶¶ 10–11. And "LDH Health Standards has the responsibility to monitor such providers, to ensure providers' compliance with licensing regulations (and Medicaid regulations if the provider is enrolled in Louisiana Medicaid—the majority of HCBS providers are enrolled in Louisiana Medicaid), and to safeguard the health, safety, and welfare of clients receiving services." *Id.* ¶ 11. When the duty to license HCBS providers was transferred to LDH's Health Standards Section in July 2005, the number of regulated HCBS providers was approximately 1,600. *Id.* ¶ 10. Another 870 providers applied for licensing shortly thereafter. *Id.* Regulating such a large number of providers presented a significant challenge for LDH.

Beyond conducting the initial licensure surveys and the periodic licensing

---

[1] Director Cecile Castello is a Defendant in this litigation. Defendants submit her affidavit to support their Motion to Dismiss.

surveys, LDH must also conduct "complaint surveys." Id. ¶ 11. "A complaint survey is a targeted, abbreviated survey, reviewing a specific complaint." *Id.* "Complaint surveys are generally conducted within 2 business days for immediate jeopardy allegations and within 30 days for other allegations." *Id.*

Importantly, HCBS services "are provided in a person's home generally." *Id.* ¶ 12. And so, "a typical HCBS provider survey does not just consist of a 'one-stop' survey, but consists of multiple sites/homes that may be visited/surveyed and multiple individuals and families that must be contacted away from the business entity. This extends the time for an effective survey." *Id.*

The LDH Health Standards Section was provided with "only two (2) positions" to handle this tremendous workload. *Id.* ¶ 10. Because of these resource limitations "surveys at all six hundred (600) HCBS providers are not able to be conducted by LDH Health Standards on a routine annual basis. Instead, LDH Health Standards schedules full licensure surveys only on approximately one-third of the six hundred (600) providers annually." *Id.* ¶ 11.

### D. Louisiana's Facility Need Review Program

Consumers of respite and SIL services are not always in a position to complain or report abuse. For this reason, "[e]ffective regulatory oversight of HCBS providers is necessary, especially considering that HCBS providers serve the elderly and disabled population." *Id.* ¶ 12.

To limit the burden on regulators, Louisiana instituted a Facility Need Review (FNR) program for HCBS providers. *See* La. Admin. Code tit. 48, § 12523; *see also*

Castello Decl. ¶ 9 (listing reasons why "the FNR process was implemented for HCBS providers"). Before seeking a HCBS license, an applicant must first obtain FNR approval. *Id.* § 12523 ("No HCBS provider shall be licensed to operate unless the FNR Program has granted an approval for the issuance of an HCBS provider license.").

Under the FNR program, LDH is tasked with reviewing applications from aspiring providers "to determine if there is a need for an additional HCBS provider in the geographic location for which the application is submitted." *Id.* § 12523(C)(1). "[T]he FNR program . . . provides an applicant with the opportunity to demonstrate (without limiting the type of data, documentation or evidence that a provider may submit) that there is a need for another licensed HCBS provider to serve recipients so that recipients are able to receive services timely." Castello Decl. ¶ 13.

If FNR approval is denied, an applicant is afforded an opportunity for a supplemental review by the FNR review committee. Additionally, the applicant may pursue an administrative appeal. § 12505(B)(4). "[F]ailure to file timely for an administrative appeal shall exhaust the applicant's remedies with the department and the decision to deny FNR approval is final." *Id.*

### E. Plaintiffs Failed FNR and Brought This Action Against LDH Officials

Plaintiffs allege that, "[i]n 2019, Ms. Newell-Davis applied for FNR approval to provide respite and supervised independent living services." Compl. 9 ¶ 38. LDH denied the application. *Id.* ¶ 40; *see* Compl. Ex. A. It does not appear that Plaintiffs sought an administrative appeal. *See id.* In addition, LDH has no record of Plaintiff requesting a supplemental review opportunity as afforded by the FNR regulations.

*Id.* §12505 (B)(4)(b). Instead, Plaintiffs retained legal counsel from the Pacific Legal Foundation[2] and the Pelican Institute for Public Policy[3]—organizations dedicated to promulgating free market initiatives through litigation—and filed a complaint in this Court against a collection of LDH officials and employees.[4]

Plaintiffs bring facial and as-applied challenges to the FNR under the Fourteenth Amendment and the Due Process and Equal Protection provisions of the Louisiana Constitution. According to Plaintiffs, Louisiana's laws do "not lower costs, ensure adequate supply, or improve quality" of respite services. Compl. 2 ¶ 4. Instead, they "drive[] up costs, reduce[] supply, harm[] quality, and deprive[] those most vulnerable—special needs children—of choices when it comes to the care they need." *Id.* These alleged flaws in the laws are so grievous that, in Plaintiffs' view, the State's regulatory scheme is unconstitutional.

Plaintiffs seek a declaratory judgment from this Court that the FNR program is unconstitutional. The Plaintiffs also seek a permanent injunction that would prohibit Defendants from enforcing the FNR program. Plaintiffs ask for an award of

---

[2] According to its website, "Pacific Legal Foundation is a national, nonprofit legal organization that defends the individual liberty and constitutional rights of Americans threatened by government overreach and abuse." Pacific Legal Foundation, *About Us*, https://pacificlegal.org/. Its website proclaims that "PLF believes that the Constitution favors the free market economy. Courts should ensure a free marketplace and invalidate laws that favor certain groups of [sic] over others." *See* Pacific Legal Foundation, *What we Fight For Economic Liberty*, https://pacificlegal.org/economic-liberty/.

[3] According to its website, "[t]he Institute's mission is to conduct research and analysis that advances sound policies based on free enterprise, individual liberty, and constitutionally-limited government." *See* Pelican Institute for Public Policy, *About the Pelican Institute*, https://pelicaninstitute.org/.

[4] The Defendants are Courtney N. Phillips, in her official capacity as Secretary of LDH; Ruth Johnson, in her official capacity as Undersecretary of LDH; Julie Foster Hagan, in her official capacity as Assistant Secretary of LDH's Office for Citizens with Developmental Disabilities; Cecile Castello, in her official capacity as Health Standards Section Director of LDH; and Dasiny Davis, in her official capacity as Facility Need Review Program Manager of the LDH.

attorney fees, costs, and expenses under 42 U.S.C. § 1988.

Defendants move the Court to dismiss Plaintiffs' complaint under Rule 12(b)(6).

## ARGUMENT

Plaintiffs' challenge to Louisiana's laws under 42 U.S.C. § 1983 invites this Court to substitute its policy preferences for those of the Louisiana Legislature. Plaintiffs' complaint amounts to a bid to "return[] to the bygone era of *Lochner v. New York*, 198 U.S. 45 (1905), in which it was common practice for [the federal judiciary] to strike down economic regulations adopted by a State based on the [judiciary's] own notions of the most appropriate means for the State to implement its considered policies." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 589 (1980) (Rehnquist, J., dissenting). The Court should decline Plaintiffs' invitation.

To allow the government breathing room to experiment with policy implementation free from judicial interference, the United States Supreme Court has explained that, "where there are plausible reasons for [governmental] action, [the federal judiciary's] inquiry is at an end." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993) (internal quotation marks omitted and capitalization altered). "[T]hose attacking the rationality of the legislative classification have the burden "to negative *every conceivable basis which might support it*." *Id.* at 315 (emphasis added) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

The Louisiana Constitution provides a similar framework to address challenges to economic and social regulations. The Louisiana Supreme Court has

8

explained that the Louisiana Constitution's Due Process provision provides exactly the same guarantees as the Due Process Clause of the Fourteenth Amendment. *See LaPointe v. Vermilion Par. Sch. Bd.*, 2015-0432 (La. 6/30/15), 173 So. 3d 1152, 1160; *State v. Bazile*, 2012-2243 (La. 5/7/13), 144 So. 3d 719, 730. And, although the Equal Protection provision of the Louisiana Constitution applies a little differently than its federal counterpart in the Fourteenth Amendment, the FNR program should survive unless "it does not suitably further any appropriate state interest." *Sibley v. Bd. of Sup'rs of La. State Univ.*, 477 So. 2d 1094, 1107 (La. 1985).

The FNR program has a rational basis and it furthers the State's appropriate interest in consumer protection. Routinely surveying HCBS providers benefits consumers by ensuring quality care. But, as described above, regulating HCBS providers is a resource-intensive process. Limiting the number of HCBS providers eases the regulatory burden on the State and enables better regulation.

 Plaintiffs cannot meet their heavy burden to negate every conceivable basis for supporting the law. Thus, Plaintiffs have failed to allege any plausible legal challenge to the laws. The Court should dismiss Plaintiffs' complaint under Rule 12(b)(6).

## I.    PLAINTIFFS' COMPLAINT MUST ARTICULATE A PLAUSIBLE LEGAL CLAIM TO SURVIVE A MOTION TO DISMISS.

Under the familiar standard, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hines v. Quillivan*, 982 F.3d 266, 271 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "All well-pleaded facts are accepted as true and view[ed] . . . in the light most favorable to the plaintiff." *Doe v. United States*, 831 F.3d 309, 314 (5th Cir. 2016) (internal quotation marks omitted). But "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see Twombly*, 550 U.S. at 555. ("On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." (cleaned up)).

The Fifth Circuit has explained that "a plaintiff alleging an equal-protection claim" is not "always entitled to present evidence and make it beyond the motion-to-dismiss stage." *Hines*, 982 F.3d at 273–74. Indeed, "*[a] legislative choice is not subject to courtroom factfinding* and may be based on rational speculation unsupported by evidence or empirical data." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (emphasis added) (quoting *Beach Commc'ns*, 508 U.S. at 315). "It is immaterial that the complaint alleges reasons for the action which are not legitimate." *Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.2d 921, 936 (5th Cir. 1988). The same is true of claims under the Due Process Clause and Privileges and Immunities Clause of the Fourteenth Amendment that merely duplicate Equal Protection claims. *See Lindquist v. City of Pasadena*, 525 F.3d 383, 387–88 (5th Cir. 2008).

According to the Fifth Circuit, "it makes sense to use a motion to dismiss as the vehicle through which to address the viability of the [equal protection] claim." *Glass v. Paxton*, 900 F.3d 233, 245 (5th Cir. 2018) "This is especially true when 'it takes but momentary reflection' to arrive at a purpose that is both legitimate beyond

dispute and rationally related to the state's classification." *Id.* (quoting *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 74 (1978)).

It appears that the only dispute between the parties at this stage of the litigation is whether the FNR program has a rational basis. And "a state is not required 'to produce evidence to sustain the rationality of a statutory classification.'" *Hines*, 982 F.3d at 273–74 (quoting *Heller*, 509 U.S. at 320). Because Plaintiffs cannot meet their heavy burden to negate "every conceivable basis which might support" the FNR provisions—*Beach Commc'ns*, 508 U.S. at 315—Rule 12(b)(6) dismissal is appropriate here.

## II.   PLAINTIFFS FAILED TO PLAUSIBLY ALLEGE ANY VIOLATION OF THE FOURTEENTH AMENDMENT.

Plaintiffs challenge the FNR program under three different clauses of the Fourteenth Amendment of the United States Constitution: the Due Process Clause, the Equal Protection Clause, and the Privileges or Immunities Clause. *See* Compl. 15–19, ¶¶ 70–99. According to Plaintiffs, the FNR provisions are unconstitutional because they are "irrational." *Id.* 16 ¶ 81, 18 ¶ 94, 19 ¶ 99. Plaintiffs' challenges fail under each clause.

### A. The FNR Program Does Not Violate the Equal Protection Clause Because It Furthers the State's Legitimate Interest in Consumer Protection.

To state an equal protection claim, "the plaintiff must prove that similarly situated individuals were treated differently." *Hines*, 982 F.3d at 272 (quoting *Beeler v. Rounsavall*, 328 F.3d 813, 816 (5th Cir. 2003)). If the plaintiff is not a member of a suspect class, then the Court considers "whether the 'classification rationally

further[s] a legitimate state interest.'" *Id.* at 273 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, (1992)); *see Beach Commc'ns*, 508 U.S. at 313 ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."); *see also Sullivan v. Stroop*, 496 U.S. 478, 485 (1990); *Bowen v. Gilliard*, 483 U.S. 587, 600–603 (1987); *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 174–179 (1980); *Dandridge v. Williams*, 397 U.S. 471, 484–485 (1970). The question of whether a law rationally furthers a legitimate state interest is generally known as "rational-basis review."

"Rational-basis review is guided by the principle that [federal courts] do not have 'a license . . . to judge the wisdom, fairness, or logic of legislative choices.'" *Hines*, 982 F.3d at 273 (quoting *Heller*, 509 U.S. at 319). "When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *Id.* (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). Thus, "[t]he constitutional test for rationality of a legislative classification, whether the classes be distinguished in the text of the law or in its administration, is *whether any rational decisionmaker could have so classified.*" *Id.* (emphasis added) (quoting *Stern v. Tarrant Cty. Hosp. Dist.*, 778 F.2d 1052, 1056 (5th Cir. 1985)).

Plaintiffs claim that the FNR program "treat[s] Plaintiffs differently than

12

others similarly situated without serving any legitimate governmental interest."
According to Plaintiffs, "[t]he FNR requirement draws an arbitrary and irrational
distinction between respite care providers who may legally provide care and those
who may not." Compl. 17 ¶ 85. Plaintiffs claim that the FNR regulations do "not lower
costs, ensure adequate supply, or improve quality" of providers' services. Compl. 2 ¶
4. Instead, they "drive[] up costs, reduce[] supply, harm[] quality, and deprive[] those
most vulnerable—special needs children—of choices when it comes to the care they
need." *Id.*

For the purposes of the motion to dismiss, the State does not dispute Plaintiffs'
claim that the FNR program treats Plaintiffs differently than other providers of
respite and SIL services. *See Hines*, 982 F.3d at 273 ("On appeal, the State does not
challenge the similarly situated element of the equal-protection claim, and we will
assume without deciding that it is met.").

But the State strongly contests Plaintiffs' allegation that the FNR Program
does not further any legitimate state interest. Importantly, the FNR Program does
not involve any suspect classifications—Plaintiffs make no allegations that it does—
and so the only question for the Court is whether the "[C]ourt is able to hypothesize
a legitimate purpose to support the action." *Mahone*, 836 F.2d at 934; *accord* Glass,
900 F.3d at 245. "[T]he task of hypothesizing necessarily renders less important the
actual reasons which the state may have had for making the challenged
classification." *Id.* at 936. Indeed, because the Supreme Court has never required "a
legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for

constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Commc'ns*, 508 U.S. at 314–15 (citing *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. at 179; *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)).

To be sure, "rationality analysis requires more than just a determination that a legitimate state purpose exists; it also requires that the classification chosen by the state actors be rationally related to that legitimate state purpose. Although the legitimate purpose can be hypothesized, the rational relationship must be real." *Mahone*, 836 F.2d at 937 (citing *Cleburne*, 473 U.S. at 447–50). But the fact that a law protects or favors a particular industry "is not an *illegitimate* interest when protection of the industry can be linked to advancement of the public interest or general welfare." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 220 (5th Cir. 2013); *see also Greater Hous. Small Taxicab Co. Owners Ass'n v. City of Hous.*, 660 F.3d 235, 240 (5th Cir. 2011). And it bears emphasis that Plaintiffs carry the heavy burden "to negative *every conceivable basis which might support*" the FNR program. *Beach Commc'ns*, 508 U.S. at 315 (emphasis added).

Plaintiffs cannot satisfy their heavy burden because the FNR program furthers the State's legitimate interest in ensuring consumer protection. Plaintiffs may be correct that removing the FNR process would increase the supply of providers to consumers of respite and SIL services. According to Plaintiffs, "basic economics demonstrates" that removing the FNR program would decrease prices and improve quality. Compl. 13 ¶ 54. But the Louisiana Legislature could rationally conclude that

the laissez-faire, market-based competition that Plaintiffs champion is not in the best interests of the vulnerable[5] Louisiana residents who rely on HCBS providers. *See* Castello Decl. ¶ 12 ("HCBS providers serve the elderly and disabled population."); Compl. 6 ¶ 22 (alleging that Plaintiffs want to serve "families with special needs children"). Elderly, disabled, and special needs populations are not always in a position to determine if they are receiving quality care. *See* Marshall B. Kapp, *Health Care in the Marketplace: Implications for Decisionally Impaired Consumers and Their Surrogates and Advocates*, 24 S. Ill. U. L.J. 1, 6 (1999) ("Realistically, . . . we must recognize that not all older and disabled persons will be able to participate fully, autonomously, and meaningfully in a consumer directed marketplace.").

Routinely surveying HCBS providers benefits consumers by ensuring quality care. But regulating HCBS providers is a resource-intensive process. Limiting the number of HCBS providers, which are abundant across Louisiana, eases the regulatory burden on the State. Without the FNR program, numerous additional providers are sure to apply for an initial license. *See* Compl. 9 ¶ 34 (explaining that, between January 2019 and September 2020, LDH "decided at least one hundred nineteen HCBS applications for FNR approval" but denied eight-six of the applications."). Handling those additional applications would "substantially increase the time frame for conducting annual surveys, increase the potential for more complaint surveys (since there will be more providers in the program), lessen the

---

[5] "Both the sociology and social work professions define 'vulnerability' in terms of a lack of ability to protect oneself from two forms of potential threats to a person's health and development." M. Neil Browne et. al., *Protecting Consumers from Themselves: Consumer Law and the Vulnerable Consumer*, 63 Drake L. Rev. 157, 177 (2015).

ability of LDH Health Standards to conduct the large sample licensure surveys."
Castello Decl. ¶ 11. This would of course "limit the ability of LDH Health Standards
to effectively regulate currently licensed HCBS providers and safeguard the health,
safety, and welfare of the populations served." *Id.* ¶ 11.

Thus, the FNR program furthers the State's legitimate interest in ensuring
that HCBS providers give their consumers quality care, and so Plaintiffs' equal
protection claim should fail. Even if Plaintiffs are correct, and their proposed free-
market approach would more efficiently guarantee quality services that does not
mean the Louisiana Legislature's choice is irrational or illegitimate. And while the
FNR program may benefit established providers, that fact does not render the law
illegitimate. *See St. Joseph Abbey*, 712 F.3d at 220.

The FNR program also protects the integrity of the State's Medicaid program,
and ensures that Medicaid resources are directed to where they are most needed.
"[T]he majority of HCBS providers are enrolled in Louisiana Medicaid." Castello Decl.
¶ 11. The State's Medicaid budget is of course finite, and any provider who accepts
Medicaid funding draws from the pool of available resources. To ensure that this pool
is not exhausted, the State has a reasonable interest in ensuring that an appropriate
number of Medicaid providers exist in the State. The State also has a duty to ensure
that HCBS providers comply with Medicaid regulations, and the FNR program helps
the State monitor the providers by limiting their numbers. Castello Decl. ¶ 11.

The FNR program is easily distinguishable from the Louisiana law the Fifth
Circuit struck down as irrational in *St. Joseph Abbey v. Castille*, 712 F.3d 215, 220

16

(5th Cir. 2013). In that case, the court considered "a Louisiana rule that granted funeral homes the exclusive right to sell caskets." *Hines*, 982 F.3d at 273 (discussing *St. Joseph Abbey*, 712 F.3d at 217). "A group of monks at an abbey constructed and sold wooden caskets," and the monks challenged the Louisiana law under the Equal Protection and Due Process clauses of the Fourteenth Amendment. *See id.*

The State attempted to defend the law on the grounds that requiring casket construction in funeral homes advanced the State's interests in consumer protection and public health. *Hines*, 982 F.3d at 274; *St. Joseph Abbey*, 712 F.3d at 223, 226. The Fifth Circuit found those rationales rose "to the level of 'fantasy.'" *Glass*, 900 F.3d at 245 (quoting *St. Joseph Abbey*, 712 F.3d at 223). The court reasoned that "Louisiana does not even require a casket for burial, does not impose requirements for their construction or design, does not require a casket to be sealed before burial, and does not require funeral directors to have any special expertise in caskets." *Id.* Importantly, the court observed that "[n]o provision mandates *licensure requirements for casket retailers* or insists that a casket retailer employ someone trained in the business of funeral direction." *St. Joseph Abb*ey, 712 F.3d at 223 (emphasis added). At bottom, "all that was left of the state's motivation was economic protectionism that actually seemed to harm consumers." *Hines*, 982 F.3d at 274 (discussing *St. Joseph Abbey*, 712 F.3d at 226–27). When striking down the Louisiana law, the Fifth Circuit went out of its way to emphasize that "the ghost of *Lochner* [is not] lurking about. We deploy no economic theory of social statics or draw upon a judicial vision of free enterprise." *St. Joseph Abbey*, 712 F.3d at 226–27.

The problems with the irrational casket law do not infect the FNR program. As discussed, unlike casket retailers, Louisiana heavily regulates HCBS providers and requires their licensure. To maintain their licenses, providers must continually pass LDH's surveys. The clients of HCBS providers are often vulnerable and subject to abuse. The FNR program enables the State to better monitor HCBS providers. More effective monitoring ensures consumer protection. The FNR program amounts to much more than fantasy or economic protectionism that harms consumers; rather, the FNR program protects the vulnerable consumer by establishing a mechanism legislatively intended to provide a number of providers that can be adequately regulated without compromising the consumers' health and safety while not limiting access to care.

The webpage of Plaintiffs' counsel—Pacific Legal Foundation—proclaims that the foundation "believes that the Constitution favors the free market economy. Courts should ensure a free marketplace and invalidate laws that favor certain groups of [sic] over others." Pacific Legal Foundation, *What We Fight For Economic Liberty*, https://pacificlegal.org/economic-liberty/. This is precisely "the judicial vision of free enterprise" that the Fifth Circuit condemned in *St. Joseph Abbey*. 712 F.3d at 226–27. This Court should decline Plaintiffs' invitation to conjure "the ghost of *Lochner*." *Id.*

### B. Because Plaintiffs' Due Process Claim Duplicates Their Equal Protection Claim, It Should be Dismissed.

Plaintiffs also challenge the FNR program under the Due Process Clause of the Fourteenth Amendment. Plaintiffs claim that the FNR program interferes with their

18

substantive due process "right to earn a living in a chosen profession free from unreasonable government interference." Compl. 15 ¶ 71.

The Fifth Circuit has held that when a plaintiff "recast[s]" a substantive due process claim in the terms of an equal protection claim, dismissal of the due process claim is proper. *Lindquist*, 525 F.3d at 387–88 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."); *Willis v. Town of Marshall*, 426 F.3d 251, 266 (4th Cir. 2005) ("Because Willis's substantive due process claim thus 'fully overlaps' her Equal Protection claim, the district court properly rejected the due process claim.")).

Plaintiffs' substantive due process claim fully overlaps with their equal protection claim. *Compare* Compl. 15–17 ¶¶ 70–82 *with* Compl. 17–18 ¶¶ 83–95. The analysis required under either clause of the Fourteenth Amendment is virtually identical. For all the reasons already discussed, the FNR program survives rational-basis review.

To the extent Plaintiffs raise a *procedural* due process claim, Plaintiffs were afforded more than constitutionally adequate process. The Supreme Court has explained that "[t]o determine what process is constitutionally due, we have generally balanced three distinct factors: 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'" *Gilbert v. Homar*, 520 U.S. 924, 931–32 (1997) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

As discussed above, the State has a legitimate and important interest in ensuring consumer protection and regulating HCBS providers. Plaintiffs received adequate process at the state administrative level, through their right to request a supplemental review of the LDH FNR decision and to seek an administrative appeal—which Plaintiffs chose not to pursue. *See* La. Admin. Code tit. 48, §§ 12505(B)(3).

Dismissal of Plaintiffs' Fourteenth Amendment due process claim is appropriate under Rule 12(b)(6).

## C. Plaintiffs' Privileges and Immunities Clause Claim Fails for the Same Reasons.

Plaintiffs also bring a claim under the Privileges and Immunities Clause. Compl. 18–19 ¶¶ 96–99. It is not clear that this Clause protects Plaintiffs from *intra-*state discrimination. *See Toomer v. Witsell*, 334 U.S. 385, 396 (1948) ("[The Clause] does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States."); *Zobel v. Williams*, 457 U.S. 55, 74 (1982) (O'Connor, J., concurring). The Clause protects only basic and essential activities. *Baldwin v. Montana Fish & Game Comm'n*, 436 U.S. 371, 387 (1978)). "The Privileges and Immunities Clause is often invoked but seldom relied upon by judges in disputes involving the application of statutes and ordinances." *Rainwaters v. Jackson Cty.*, No. 93-7016, 1993 WL 481561,

at *3 n.2 (5th Cir. Nov. 1, 1993) (unpublished).

Even assuming the Clause applies here, "[l]ike many other constitutional provisions, the privileges and immunities clause is not an absolute." *Toomer*, 334 U.S. at 396. "[I]t does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it." *Id.* Courts should conduct any inquiry under the clause "with due regard for the principal that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures." *Id.*

Plaintiffs' claim under this Clause, like the Substantive Due Process Clause, duplicates their Equal Protection Clause claim. In any event, the FNR program survives any rational basis review required under the Privileges and Immunities Clause for the same reasons described above. And so, this claim also warrants dismissal under Rule 12(b)(6).

## III.   PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS SHOULD ALSO BE DISMISSED.

Plaintiffs also bring two claims under the Louisiana constitution.[6] Neither claim has any merit because, as explained, the FNR program advances a rational objective of the Louisiana Legislature: ensuring consumer protection and access to quality care.

---

[6] This Court likely has "pendent subject matter jurisdiction" over Plaintiffs' state-law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (explaining that a federal court has subject matter jurisdiction over state-law claims if the Plaintiffs' federal claims "have substance sufficient to confer subject matter jurisdiction" and the Plaintiffs' state-law claims "derive from a common nucleus of operative fact").

### A. Plaintiffs' State Due Process Claim Duplicates Their Federal Due Process Claim.

The Louisiana Supreme Court has interpreted the due process guarantee of the Louisiana Constitution—*see* La. Const. art. I § 2—to match the federal Due Process Clause. This is true for both procedural and substantive due process claims. *See State v. Griffin*, 2014-1214 (La. 10/14/15), 180 So. 3d 1262, 1270 (procedural); *LaPointe*, 173 So. 3d at 1160 (procedural); *Bazile*, 144 So. 3d at 730 (substantive); *Theriot v. Terrebonne Par. Police Jury*, 436 So. 2d 515, 519 (La. 1983) (substantive). Thus, the Louisiana Constitution does not guarantee Plaintiffs any more process than the federal Constitution.

The Fifth Circuit has explained that when a state constitutional claim duplicates a federal constitutional claim, the state claim should be dismissed. *Lindquist*, 525 F.3d at 388 n.3 (rejecting a Texas constitutional due process claim after concluding that "[b]ecause the protections afforded by this clause and the Due Process Clause are the same, no separate analysis of the due course of law claim is necessary."). Thus, given that Plaintiffs' federal due process claims fail as described *supra*, their state due process claim should likewise fail.

### B. Plaintiffs' State Equal Protection Claim Fails Because the FNR Program Furthers the State's Legitimate Interests in Consumer Protection.

Unlike the Louisiana Constitution's due process clause, the State's equal protection guarantee does not simply mirror the federal Fourteenth Amendment. Louisiana's Constitution guarantees that "no person shall be denied the equal protection of the laws." La. Const. art. I, § 3. The Louisiana Supreme Court has

explained that "[f]ederal jurisprudence should not be used as a model for the interpretation or application" of this clause. *Sibley*, 477 So. 2d at 1107. Rather than adopting the "various tiers of scrutiny" approach to equal protection claims embraced by federal courts, the Louisiana Supreme Court has stated that, if a state law classifies apparently similar people or businesses differently, the basis of the classification determines the stringency of review. State law precedent recognizes three sorts of classifications:

> (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that *it does not suitably further any appropriate state interest.*

*Id.* at 1107–08 (emphasis added).

Plaintiffs' challenge here does not implicate any of the more suspect classifications outlined above, such as race, religion, or sex. Thus, their challenge must fail unless they can show that the State's FNR program "does not suitably further any appropriate state interest." *Id.* at 1108. This is a difficult standard to meet, and it is very similar to the federal "rational basis" test. When, as here, "an economic regulation is challenged as violating the equal protection clause, this court may not sit as a super-legislature to judge the wisdom or desirability" of that regulation. *Lakeside Imports, Inc. v. State*, 94-0191 (La. 7/5/94), 639 So. 2d 253, 257. "In the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand." *Id.*

As described above, Louisiana's FNR program is not wholly arbitrary because it furthers the State's legitimate interests in consumer protection. It ensures that all HCBS providers can be properly monitored and held to a high standard of care. Increasing the number of providers would "substantially increase the time frame for conducting annual surveys," meaning that each facility would only be inspected rarely. Castello Decl. ¶ 11. This in turn would "limit the ability of [the Health Standards section] to effectively regulate [providers] and safeguard the health, safety, and welfare of the populations served." *Id.*

And, again, the FNR provisions ensure the integrity of the State's Medicaid program and consumers' access to care. They help LDH effectively regulate and monitor the providers who accept federal dollars. The State has a rational interest in ensuring LDH's regulators are not overburdened.

Louisianans may disagree about health care policy. But this Court's duty is much simpler than devising health care policy—the "wisdom or desirability" of Louisiana's FNR laws are not at issue here. *Lakeside Imports*, 639 So. 2d at 257. Instead, the question for this Court is whether Plaintiffs have affirmatively shown that the challenged laws "do[] not suitably further any appropriate state interest." *Sibley*, 477 So. 2d at 1107–08. Plaintiffs have failed to plausibly allege that the State was not acting to further its legitimate interest in both patient safety and financial prudence. As Plaintiffs have failed to meet their burden, the FNR program should be upheld.

## CONCLUSION

The State respectfully asks the Court to dismiss Plaintiffs' complaint under Rule 12(b)(6).

Respectfully submitted

 /s/  *Shae McPhee*
Elizabeth B. Murrill (#20685)
  Solicitor General
Shae McPhee (#38565)
  Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
909 Poydras Street, Suite 1850
New Orleans, Louisiana 70112
Telephone: (225) 938-0779
Email: mcphees@ag.louisiana.gov


 /s/ *Neal R. Elliott, Jr.*
Neal R. Elliott, Jr. (#24084)
Kimberly L. Sullivan (#27540)
Kimberly L. Humbles (#24465)
Stephen R. Russo (#23284)
LOUISIANA DEPARTMENT OF HEALTH
628 N. 4th Street
P.O. Box 3836
Baton Rouge, Louisiana 70821-3836
Telephone: (225) 342-1128
Facsimile: (225) 342-2232
Email: Neal.Elliott@la.gov
        Kimberly.Sullivan@la.gov
        Kimberly.Humbles@la.gov
        Stephen.Russo@la.gov

*Counsel for Defendants*