UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| URSULA NEWELL-DAVIS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COURTNEY N. PHILLIPS, *et al.*, <br><br> Defendants. | CIVIL ACTION NO. 2:21-CV-00049-NJB-JVM <br><br><br> JUDGE NANNETTE JOLIVETTE BROWN <br><br> MAGISTRATE JUDGE JANIS VAN MEERVELD |

## DECLARATION OF CECILE CASTELLO

In the State of Louisiana, the undersigned personally appears and pursuant to 28 U.S.C. § 1746 declares as follows:

1. My name is Cecile Castello. I am over the age of twenty-one (21), and I have personal knowledge of the matters set forth herein.

2. I serve as the Director of the Health Standards Section with the Louisiana Department of Health ("LDH"). In that role, I am responsible for oversight of statewide surveying, licensing, and certification of health care providers, including home- and community-based service (HCBS) providers in Louisiana. Additionally, the Department's Facility Need Review Program, is housed within the Health Standards Section of LDH.

3. I have served in my current position since November of 2012. Prior to that, I served as Field Operations Supervisor with the Health Standards Section of LDH.

4. LDH's Facility Need Review Program is established pursuant to La. R.S. 40:2116, wherein the Louisiana Legislature directed LDH to establish this program.

5. LDH's Facility Need Review ("FNR") Program has been implemented pursuant to rules promulgated pursuant to the Louisiana Administrative Procedure Act, La. R.S. 49:950 *et seq.*, and is codified in the Louisiana Administrative Code at LAC 48:I, Chapter 125.

6. LDH's Facility Need Review Program covers several health care provider types licensed and/or certified by LDH. The HCBS provider program is one of the health care provider types within LDH's Facility Need Review Program. See FNR Rules for HCBS providers, LAC 48:I, Chapter 125, Section 12523.

7. LDH's Facility Need Review Program affords each applicant who is denied a FNR approval both a supplemental review (where the applicant can submit additional information and documentation with their application for further consideration) and an administrative appeal with the Louisiana Division of Administrative Law. See LAC 48:I, Chapter 125, Section 12505 and Section 12541.

8. Pursuant to promulgated rule, LDH implemented the FNR approval process for HCBS providers in or about November of 2009.

9. The FNR process was implemented for HCBS providers for multiple reasons: (a) the number of HCBS providers already licensed in the state and serving

recipients; (b) the ability to conduct full licensure surveys at HCBS providers on a regular basis to properly regulate HCBS providers in the state and to safeguard the health, safety, and welfare of clients receiving services given the population that is served by such providers; and (c) the ability to provide for additional licensed and certified HCBS providers should there be a need in a particular area or for a particular underserved population.

10. <u>Number of HCBS Providers</u>: The number of existing licensed HCBS providers was considered when FNR was implemented on HCBS providers. The licensing of HCBS providers was transferred by legislative act to the Louisiana Department of Health in or about July 2005, encompassing approximately sixteen hundred (1600) licensed providers; upon this transfer, LDH Health Standards only received two (2) positions (through new hires or reallocations) to handle the workload that came with the sixteen hundred (1600) providers. Additionally, during the first couple of years of LDH licensing these providers, another eight hundred seventy (870) providers (approximately) applied for initial licensing – again, with no increase in LDH Health Standards staff. With the number of applicants reaching such numbers, the Department put forth legislation in 2008 (Act 839 of the 2008 Louisiana Regular Legislative Session) whereby HCBS providers would have a combined license (combining personal care attendance services, respite services, supervised independent living services, adult day care services, and others into one license). This has resulted in the number of licensed HCBS providers stabilizing at approximately six hundred (600) providers; these six hundred (600) providers provide home- and-

community-based services to all parishes of the state. Further, a HCBS provider's license is valid for a multi-parish region of the state, so a licensed HCBS provider is able to serve recipients across several parishes. Additionally, a HCBS provider can serve unlimited recipients in those parishes provided that the HCBS provider has sufficient and trained staff to provide the services. Compare six hundred (600) HCBS providers to the number of licensed hospitals (208), the number of licensed home health agencies (184), and the number of licensed nursing homes (278) in Louisiana.

11. <u>Survey and Regulatory Activities</u>: Survey and regulatory activities of HCBS providers were considered when implementing FNR on this provider type. With approximately six hundred (600) HCBS providers currently licensed, LDH Health Standards has the responsibility to monitor such providers, to ensure providers' compliance with licensing regulations (and Medicaid regulations if the provider is enrolled in Louisiana Medicaid – the majority of HCBS providers are enrolled in Louisiana Medicaid), and to safeguard the health, safety, and welfare of clients receiving services. Generally, the Department conducts two types of surveys for HCBS providers: complaint surveys and full licensure surveys. A complaint survey is a targeted, abbreviated survey, reviewing a specific complaint about a certain recipient or group of recipients; the complaint survey looks only at the regulations specifically related to that complaint, unless the complaint survey determines that a full licensure survey should be conducted. LDH Health Standards prioritizes complaint surveys at this time. Complaint surveys are generally conducted within 2 business days for immediate jeopardy allegations and within 30

days for other allegations. However, due to resource limitations (such as the number of surveyors), full licensure surveys at all six hundred (600) HCBS providers are not able to be conducted by LDH Health Standards on a routine annual basis. Instead, LDH Health Standards schedules full licensure surveys only on approximately one-third of the six hundred (600) providers annually. This results in a HCBS provider only receiving a full licensing survey about once every three years. If FNR is suspended or overturned, numerous additional providers will apply for a license; this will substantially increase the time frame for conducting annual surveys, increase the potential for more complaint surveys (since there would be more providers in the program), and thus limit the ability of LDH Health Standards to effectively regulate HCBS providers and safeguard the health, safety, and welfare of the populations served. Effective regulatory oversight of HCBS providers is necessary, especially considering that HCBS providers serve the elderly and disabled population.

12. <u>Survey and Regulatory Activities – Populations Served</u>: The type of survey activity for HCBS providers was also considered when FNR was considered for this program type. Generally, a LDH Health Standards Section survey of a facility (such as a hospital, nursing home, or rural health clinic) is conducted at the facility itself where patient records can be reviewed, where multiple observations can be made at one time, and where numerous staff and patients can be interviewed by LDH Health Standards at one time. This is not the case for HCBS providers. Home- and community-based services are provided in a person's home generally. As such, a typical HCBS provider survey does not just consist of a "one-stop" survey, but consists

of multiple sites/homes that may be visited/surveyed and multiple individuals and families that must be contacted away from the business entity. This extends the time for an effective survey. Further, because of the limited oversight of the services provided by the direct service workers in a person's home (as opposed to a hospital setting or nursing home setting, where there are several layers of staff and nursing supervision on-site), survey activities for a HCBS provider should encompass a large number of recipients (increased sample size) receiving services from that particular provider, especially considering the elderly and disabled populations served by HCBS providers. All of these issues extend the survey process for HCBS providers. If FNR is suspended or overturned, numerous additional providers will apply for an initial license; this will substantially increase the time frame for conducting annual surveys, increase the potential for more complaint surveys (since there will be more providers in the program), lessen the ability of LDH Health Standards to conduct the large sample licensure surveys, and thus limit the ability of LDH Health Standards to effectively regulate currently licensed HCBS providers and safeguard the health, safety, and welfare of the populations served. Effective regulatory oversight of HCBS providers is necessary, especially considering that HCBS providers serve the elderly and disabled population.

13. <u>FNR Approval - Opportunities</u>: The potential need for additional licensed and/or certified HCBS providers to serve particular areas or particular populations was considered when FNR was implemented on this provider type. Rather than the Louisiana Legislature implementing a statutory moratorium on new

or additional HCBS providers (like the Legislature has done for other program types), the Louisiana Legislature gave authority for the FNR program and directed LDH to implement such a program. In implementing FNR on HCBS providers, LDH considered the very real possibility of the need for new or additional HCBS providers, especially in certain underserved areas of the state, for underserved populations, or in cases where populations were not being served effectively and timely. As such, the FNR program as implemented provides an applicant with the opportunity to demonstrate (without limiting the type of data, documentation or evidence that a provider may submit) that there is a need for another licensed HCBS provider to serve recipients so that recipients are able to receive services timely. Further, there is a supplemental review process and an administrative appeals process for those providers that are denied FNR approval. This prioritizes the needs of the recipients (to receive timely services), while addressing the need to effectively regulate HCBS providers and the opportunity for a provider to obtain an initial HCBS provider license.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Baton Rouge, Louisiana, on this 23 day of February, 2021.

_____
CECILE CASTELLO