UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **URSULA NEWELL-DAVIS et al** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-49** |
| **COURTNEY N. PHILLIPS et al** | **SECTION: "G"** |

### ORDER AND REASONS

In this litigation, Plaintiffs Ursula Newell-Davis ("Newell-Davis") and Sivad Home and Community Services, LLC ("Sivad Home") (collectively, "Plaintiffs") challenge the constitutionality of "Facility Need Review" ("FNR") regulations pertaining to respite service providers, Louisiana Revised Statute § 40:2116 and Louisiana Administrative Code title 48, §§ 12503(C)(2), 12523 *et seq.*[1] Plaintiffs bring suit against Courtney N. Phillips in her official capacity as Secretary of the Louisiana Department of Health and Ruth Johnson in her official capacity as the Undersecretary of the Louisiana Department of Health (collectively, "Defendants").[2] Pending before the Court is Defendants' "Motion to Dismiss Plaintiffs' Original Complaint."[3] Considering the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion to the extent it seeks dismissal of Plaintiffs' privileges or immunities claim and denies the motion in all other respects.

---

[1] Rec. Doc. 1.

[2] *Id.* at 4–5.

[3] Rec. Doc. 31.

## I. Background

On January 12, 2021, Plaintiffs filed a complaint in this Court.[4] According to the Complaint, Newell-Davis founded Sivad Home to provide respite care for special needs children and their families.[5] Plaintiffs aver that to provide such respite services, they must participate in the "Facility Need Review" program with the Louisiana Department of Health (the "LDH") prior to becoming eligible to apply for a license to operate.[6] Plaintiffs allege that in 2019, Newell-Davis submitted an application for FNR approval in which she included "statistical data that showed . . . a need for services aimed at supervising and caring for young people," descriptions of conversations with local public figures, and citations to studies showing that "respite care can lead to better outcomes for both children and their family members."[7] Yet Plaintiffs aver that the LDH denied Plaintiffs' FNR application on February 19, 2020 for "failure to demonstrate there was a need for additional respite care business in the proposed service area."[8] Plaintiffs claim that they "are unable to lawfully provide respite care as a home and community-based provider in Louisiana because they have not obtained FNR approval."[9]

Plaintiffs contend that the FNR process "has no rational relationship to any legitimate government interest" and "[b]y reducing the number of respite care providers, the FNR requirement jeopardizes the health and safety of . . . special needs children."[10] Plaintiffs allege

---

[4] Rec. Doc. 1.

[5] *Id.* at 1.

[6] *Id.* at 2.

[7] *Id.* at 9–10.

[8] *Id.* at 10.

[9] *Id.* at 14.

[10] *Id.* at 13.

violations of the Due Process Clause, the Equal Protection Clause, and the Privileges or Immunities Clause of the Fourteenth Amendment to the United States Constitution, as well as the due process and equal protection provisions of Article I of the Louisiana Constitution.[11] Plaintiffs seek declaratory and injunctive relief.[12]

## II. Parties' Arguments

### A. *Defendants' Arguments in Support of the Motion to Dismiss*

In the instant motion, Defendants contend that Plaintiffs' federal and state constitutional claims must be dismissed for four reasons.[13] First, Defendants argue that the FNR program does not violate the Equal Protection Clause of the United States Constitution because it furthers the State's legitimate interest in consumer protection.[14] Although Defendants do not dispute Plaintiffs' claim that the FNR program treats Plaintiffs differently than other providers of respite and supervised independent living services, Defendants maintain that the FNR program does not involve any suspect classifications and the FNR program furthers the State's legitimate interest in ensuring consumer protection.[15] Specifically, Defendants argue that routinely surveying home and community based service ("HCBS") providers benefits consumers by ensuring quality care and that limiting the number of HCBS providers "eases the regulatory burden on the State."[16] Defendants also assert that the FNR program "protects the integrity of the State's Medicaid

---

[11] *Id.* at 15–22. *See* U.S. Const. amend. XIV, § 1; La. Const. art. I, §§ 2, 3.

[12] Rec. Doc. 1 at 22–23.

[13] Rec. Doc. 31-1.

[14] *Id.* at 11.

[15] *Id.* at 13–14.

[16] *Id.* at 15.

program, and ensures that Medicaid resources are directed to where they are most needed."[17]

Second, Defendants contend that Plaintiffs' substantive due process claim "fully overlaps" with Plaintiffs' equal protection claim and must be dismissed.[18] Third, Defendants argue that Plaintiffs' claim under the Privileges or Immunities Clause of the Fourteenth Amendment to the United States Constitution fails because (1) it is unclear whether the Privileges or Immunities Clause protects Plaintiffs from intra-state discrimination; and (2) Plaintiffs' argument under the Privileges or Immunities Clause duplicates Plaintiffs' Equal Protection Clause claim.[19] Fourth, Defendants assert that Plaintiffs' state constitutional claims should be dismissed because (1) Plaintiffs' state due process claim duplicates Plaintiffs' federal due process claim; and (2) Plaintiffs' state equal protection claim fails to account for the fact that the FNR program furthers the state's legitimate interest in consumer protection.[20]

**B.    *Plaintiff's Arguments in Opposition to the Motion to Dismiss***

Plaintiffs set forth four arguments in opposition to the instant motion to dismiss.[21] First, Plaintiffs argue that they have stated a claim that the FNR program violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because Plaintiffs plausibly allege that the FNR program is not rationally related to a legitimate government

---

[17] *Id.* at 16.

[18] *Id.* at 19. In addition, Defendants assert that to the extent Plaintiffs raise a procedural due process claim, Plaintiffs were "afforded more than constitutionally adequate process" because Plaintiffs received adequate process at the state administrative level through their right to request a supplemental review of the LDH FNR decision and to seek an administrative appeal. *Id.* at 19–20. Given that Plaintiffs do not assert a procedural due process claim, the Court will not consider this argument.

[19] *Id.* at 20–21.

[20] *Id.* at 21–24.

[21] Rec. Doc. 33.

interest.[22] Specifically, Plaintiffs point to their allegation that "by artificially restricting the number of suppliers, FNR drives up costs, drives down quality, and deprives Louisianans of access to qualified providers."[23] Plaintiffs also note that they cite to studies in the Complaint which Plaintiffs contend bolster their allegations that FNR is not rationally related to any legitimate ends.[24]

Second, Plaintiffs aver that they have stated a claim that the FNR program violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because Plaintiffs allege that Louisiana irrationally prohibits qualified and experienced individuals such as Plaintiffs from providing respite care while allowing others similarly situated to do the same.[25] According to Plaintiffs, the substantive due process claim differs from the equal protection claim because the due process claim alleges that FNR does not further any legitimate ends while the equal protection claim alleges that FNR "treats [Plaintiffs] differently without any rational justification."[26]

Third, Plaintiffs contend that they have stated a claim that the FNR program violates Louisiana's constitutional due process provision.[27] Specifically, Plaintiffs assert that they have plausibly alleged that FNR lacks a real and substantial relation to the promotion of the public welfare and substantially interferes with Plaintiffs' fundamental right to earn a living.[28]

---

[22] *Id.* at 10–12.

[23] *Id.* at 12.

[24] *Id.* at 13.

[25] *Id.* at 17.

[26] *Id.*

[27] *Id.* at 18.

[28] *Id.* at 19–20.

Fourth, Plaintiffs argue that their equal protection claim under the Louisiana Constitution should not be dismissed because Plaintiffs have plausibly alleged that FNR does not further any appropriate state interest.[29]

### C.   *Defendants' Arguments in Further Support of the Motion to Dismiss*

In reply, Defendants contend that Plaintiffs articulate no meaningful distinction between the legal tests required for determining whether the FNR program survives rational basis under the Equal Protection or Due Process Clause of the United States Constitution.[30] Defendants maintain that Plaintiffs carry a "heavy burden" under the rational basis test and because the FNR program "arguably" furthers its legitimate goals, Plaintiffs' claims should be dismissed.[31] Defendants further contend that, even taken as true, Plaintiffs' factual allegations "at most demonstrate that the State may not have chosen the most efficient mechanism for furthering its rational purpose of consumer protection when adopting the FNR program."[32]

Defendants also argue that Plaintiffs' reliance on the "real and substantial" relationship test for a due process violation under the Louisiana Constitution is misplaced because under Louisiana law, courts apply a rational basis test coextensive with federal jurisprudence.[33] In addition, Defendants contend that the FNR laws are facially neutral and therefore warrant minimal scrutiny under the equal protection provision of the Louisiana Constitution and Plaintiffs have failed to allege that the Louisiana legislature adopted the FNR program for a discriminatory

---

[29] *Id.* at 20–21.

[30] Rec. Doc. 38 at 3.

[31] *Id.* at 3–7.

[32] *Id.* at 7.

[33] *Id.* at 8–9.

purpose.[34]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[35] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[36] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[37]

The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[38] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[39] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[40]

Although a court must accept all "well-pleaded facts" as true, a court need not accept legal conclusions as true.[41] "[L]egal conclusions can provide the framework of a complaint, [but]

---

[34] *Id.* at 9–10.

[35] Fed. R. Civ. P. 12(b)(6).

[36] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

[38] *Twombly*, 550 U.S. at 555. Put another way, a plaintiff must plead facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

[39] *Iqbal*, 556 U.S. at 678.

[40] *Id.*

[41] *Id.* at 677–78.

they must be supported by factual allegations."[42] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[43] If the factual allegations are insufficient to raise a right to relief above the speculative level, or an "insuperable" bar to relief exists, the claim must be dismissed."[44]

A court considering a motion to dismiss "must limit itself to the contents of the pleadings, including attachments thereto."[45] Attachments to a motion to dismiss are, however, "considered part of the pleadings" if "they are referred to in the plaintiff's complaint and are central to her claim."[46] "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[47] In addition, a court may consider matters of which judicial notice may be taken.[48]

## IV. Analysis

### A. Whether Plaintiffs' Claims Under the Fourteenth Amendment to the United States Constitution Should Be Dismissed

Defendants move to dismiss Plaintiffs' Fourteenth Amendment equal protection, due process, and privileges or immunities claims for failure to state a claim upon which relief may be granted. Defendants contend that Plaintiffs' equal protection claim should be dismissed because

---

[42] *Id.* at 679.

[43] *Id.* at 678.

[44] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[45] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[46] *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)) (internal quotation marks omitted).

[47] *Carter v. Target Corp.*, 541 F. App'x 413, 416–17 (5th Cir. 2013) (quoting *Collins*, 224 F.3d at 498–99).

[48] *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

the FNR requirement furthers the State's legitimate interest in consumer protection. As to Plaintiffs' substantive due process and privileges or immunities claims, Defendants argue these claims duplicate Plaintiffs' equal protection claim and should be dismissed. The Court addresses each of these claims in turn.

### 1. Equal Protection Clause

Defendants argue that the FNR program does not violate the Equal Protection Clause of the Fourteenth Amendment because the program furthers the state's legitimate interest in consumer protection.[49] In opposition, Plaintiffs contend that they plausibly allege that the FNR program is not rationally related to a legitimate government interest.[50]

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."[51] To establish an equal protection claim, a plaintiff must first show that "two or more classifications of similarly situated persons were treated differently" under the challenged statute.[52] "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply."[53] "Strict scrutiny is required if the legislative classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution."[54] "If

---

[49] Rec. Doc. 31-1 at 11.

[50] Rec. Doc. 33 at 10–12.

[51] *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

[52] *Duarte v. City of Lewisville*, 858 F.3d 348, 353 (5th Cir. 2017) (citing *Gallegos–Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012); *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 525–26 (5th Cir. 1998)).

[53] *Id.*

[54] *Id.* at 353–54 (quoting *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995)).

neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relation to a legitimate governmental purpose."[55]

Under the deferential rational basis standard, courts afford "wide latitude" to the decisions of state legislatures.[56] The United States Court of Appeals for the Fifth Circuit has held that "pure economic protectionism is not by itself a legitimate state interest."[57] Put another way, "[a] law motivated by protectionism may have a rational basis, but 'naked economic preferences are impermissible to the extent that they harm consumers.'"[58]

Here, Plaintiffs have stated a claim for relief under the Equal Protection Clause that is plausible on its face. In the Complaint, Plaintiffs allege that the "challenged laws treat Plaintiffs differently than others similarly situated without serving any legitimate governmental interest."[59] Plaintiffs allege "there are no formal criteria" for determining "need" for FNR approval.[60] Instead, according to Plaintiffs, FNR approval prioritizes existing businesses' economic interests over new businesses.[61] Plaintiffs argue that FNR approval "has nothing to do with an applicant's qualifications or fitness to operate" and that "FNR permits the [LDH] to reject an applicant solely because there are purportedly 'enough' businesses already operating."[62] Plaintiffs contend this

---

[55] *Id.* at 354 (citing *Richard*, 70 F.3d at 417).

[56] *Id.*

[57] *Hines v. Quillivan*, 982 F.3d 266, 274 (5th Cir. 2020) (citing *St. Joseph Abbey v. Castille*, 712 F.3d 215, 222–23 (5th Cir. 2013)).

[58] *Id.* (quoting *Greater Hous. Small Taxicab Co. Owners Ass'n v. City of Hous.*, 660 F.3d 235, 240 (5th Cir. 2011)).

[59] Rec. Doc. 1 at 14.

[60] *Id.* at 8.

[61] *Id.* at 1–2.

[62] *Id.* at 2.

constitutes "economic protectionism."[63] Moreover, Plaintiffs note that, after receiving FNR approval, an "applicant must then apply for a license from the Department."[64] Plaintiffs assert that this "independent licensure requirement" serves to protect the "health and safety" of consumers, but the FNR requirement does not.[65]

Additionally, Plaintiffs allege that the FNR process bears no rational relationship to any legitimate state interest because "FNR drives up costs, drives down quality, and deprives Louisianans of access to qualified providers."[66] Therefore, accepting all of Plaintiffs' well-pleaded facts as true, Plaintiffs have stated a claim under the Equal Protection Clause. Accordingly, the Court denies Defendants' motion to the extent it seeks dismissal of Plaintiffs' equal protection claim.

### 2. Due Process Clause

Defendants argue that Plaintiffs' due process claim "duplicates" their equal protection claim and thus should be dismissed.[67] Further, to the extent Plaintiffs raise a procedural due process claim, Defendants assert that the statutory administrative procedure satisfies the procedural due process requirement.[68] Plaintiffs respond that they have plausibly alleged that FNR approval is not rationally related to a legitimate government interest.[69]

The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive

---

[63] *Id.*

[64] *Id.* at 8.

[65] *Id.*

[66] Rec. Doc. 33 at 12.

[67] Rec. Doc. 31-1 at 18.

[68] *Id.* at 19–20.

[69] Rec. Doc. 38 at 12.

any person of life, liberty, or property, without due process of law"[70] To establish a substantive due process claim, a plaintiff must "first identify a life, liberty, or property interest protected by the Fourteenth Amendment." [71] Then, a plaintiff must demonstrate that the challenged government action is not "rationally related to a legitimate governmental interest."[72] It is well established that the right to pursue private employment is a protected interest under the substantive due process clause of the Fourteenth Amendment.[73]

Defendants move the Court to dismiss Plaintiffs' due process claim because it duplicates Plaintiffs' equal protection claim. As the Supreme Court has explained, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."[74] In *Lindquist v. City of Pasadena*, the United States Court of Appeals for the Fifth Circuit held that, where an equal protection claim "fully overlaps" with a substantive due process claim, the substantive due process claim should be dismissed.[75] In that case, a city refused to issue a license to the owners of a used car dealership because the dealership failed to comply with a local ordinance.[76] The owners brought suit after

---

[70] U.S. Const. amend. XIV, § 1.

[71] *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995).

[72] *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006).

[73] *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (stating that the word "liberty" in the Fourteenth Amendment's due process clause includes "the right of the individual to contract, to engage in any of the common occupations of life"); *Phillips v. Vandygriff*, 711 F.2d 1217, 1222 (5th Cir. 1983) *modified in other part on reh'g*, 724 F.2d 490 (5th Cir. 1984) ("[A] person has a liberty interest in pursuing an occupation.").

[74] *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)).

[75] 525 F.3d 383, 387 (5th Cir. 2008) (quoting *Willis v. Town of Marshall*, 426 F.3d 251, 266 (4th Cir. 2005)).

[76] *Id.* at 384–85.

the city issued a license to a competing business that was not in compliance with the ordinance, alleging equal protection and due process violations.[77] Both the equal protection claim and the due process claim were based on the city's differential treatment of the owners compared to other similarly situated businesses.[78] In affirming the district court's dismissal of the substantive due process claim, the Fifth Circuit explained that the due process claim was "the [owners'] equal protection claim recast in substantive due process terms" and, thus, must be dismissed.[79]

The Fifth Circuit has not expanded on this rule, but district judges have applied the rule where two theories of constitutional injury are identical. For example, another district judge in the United States District Court for the Eastern District of Louisiana has held that a plaintiff's substantive due process claim should be dismissed because it "fully overlap[ped] with his Fourth Amendment unreasonable seizure claim."[80] In that case, the plaintiff claimed that an officer violated his right to be free from unreasonable seizures without due process by blocking his pathway.[81] The plaintiff separately claimed that the officer "violated his Fourth Amendment right to be free from unreasonable . . . seizures" when the officer blocked his pathway.[82] In that case, because the two constitutional injuries were identical—unreasonable seizure by blocking plaintiff's path—the Court concluded the claims "fully overlap[ped]" and dismissed the

---

[77] *Id.* at 385–86.

[78] *Id.* at 386–88.

[79] *Id.* at 387.

[80] *Carpenter v. Webre*, No. 17-808, 2018 WL 1453201, at *7 (E.D. La. Mar. 23, 2018) (Morgan, J.).

[81] *Id.*

[82] *Id.* at *9.

plaintiff's due process claim.[83] Notably, the plaintiff's second due process claim—that his "protected liberty interest to remain in a public place" was violated—did not fully overlap with another claim and was dismissed on alternate grounds.[84]

Here, however, the Court finds that, although similar, Plaintiffs' substantive due process claim does not "fully overlap" with their equal protection claim. Plaintiffs' substantive due process theory is that the FNR process deprives Plaintiffs of the right to earn a living without a rational basis.[85] On the other hand, Plaintiffs' equal protection theory is that the FNR process arbitrarily discriminates between "similarly situated" individuals without a rational basis.[86]

Analyzing Plaintiffs' substantive due process claim, the Court finds that Plaintiffs have stated a claim upon which relief can be granted. Construing the allegations in the light most favorable to Plaintiffs as the non-moving party, Plaintiffs have alleged that the FNR approval scheme burdens their right to earn a living by denying their application for FNR not on the basis of qualifications but because of a lack of "need."[87] Plaintiffs further allege that FNR approval bears no rational relationship to a legitimate government interest by driving up costs, limiting access to care, and hampering competition.[88] Accordingly, the Court will deny Defendants' motion as to Plaintiffs' Fourteenth Amendment due process claim.

---

[83] *Id.* at *7.

[84] *Id.* at *7–9.

[85] *See* Rec. Doc. 1 at 15; Rec. Doc. 33 at 16.

[86] *See* Rec. Doc. 1 at 17; Rec. Doc. 33 at 17.

[87] Rec. Doc. 1 at 10.

[88] *Id.* at 13.

### 3. Privileges or Immunities Clause

Defendants argue that Plaintiffs' claim under the Privileges or Immunities Clause of the Fourteenth Amendment to the United States Constitution fails because (1) it is unclear whether the Privileges or Immunities Clause protects Plaintiffs from intra-state discrimination; and (2) Plaintiffs' argument under the Privileges or Immunities Clause duplicates Plaintiffs' equal protection clause claim.[89] Plaintiffs respond that Defendants misconstrue Plaintiffs' Privileges or Immunities Clause claim, brought under the Fourteenth Amendment, as a claim under the Fifth Amendment's Privileges and Immunities Clause.[90]

The Privileges or Immunities Clause of the Fourteenth Amendment pertinently provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."[91] In the *Slaughter-House Cases*, the Supreme Court concluded that the Fourteenth Amendment creates distinct citizenships, state and national, each conferring its own sets of rights, and that the Privileges or Immunities Clause protects only rights of national citizenship.[92] The Supreme Court therefore clarified that the Privileges or Immunities Clause of the Fourteenth Amendment does not protect states rights of citizenship, but only federal rights of citizenship.[93] In *Deubert v. Gulf Federal Savings Bank*, the Fifth Circuit explained:

> Since the *Slaughter House Cases,* the reach of the privileges and immunities [sic] clause has been narrow. The clause protects only uniquely federal rights such as the right to petition Congress, the right to vote in federal election, the right to

---

[89] Rec. Doc. 31-1 at 20–21. Defendants' motion to dismiss referred to the Privileges and Immunities Clause. *Id.* Defendants note the Privileges or Immunities Clause is the correct provision. Rec. Doc. 38 at 2, n.2. Accordingly, the Court will address only the Privileges or Immunities Clause. *Compare* U.S. Const. art. IV, § 2, cl. 1 (Privileges and Immunities) *with* U.S. Const. amend. XIV, § 1, cl. 2 (Privileges or Immunities).

[90] Rec. Doc. 33 at 9.

[91] U.S. Const. amend. XIV, § 1.

[92] 83 U.S. 36, 77–79 (1873).

[93] *Id.*

> interstate travel, the right to enter federal lands, or the rights of a citizen while in federal custody. While the clause supports congressional legislation prohibiting impairment of federal rights, we have found no authority holding that the clause, absent legislation, supports a private cause of action for infringement of a right it secures.[94]

In that case, the Fifth Circuit declined to expand the clause to support a private cause of action, reasoning that such a reading "would be a substantial and unprecedented expansion of that clause's effect."[95]

In the Complaint, Plaintiffs allege that the Privileges or Immunities Clause "protects the right to earn a living in a lawful occupation of one's choice" and that "[b]y imposing an arbitrary and discriminatory 'need' requirement to operate as a respite care provider, Defendants . . . are arbitrarily and unreasonably interfering with Plaintiff Newell-Davis's constitutional right to earn a living in a lawful occupation in violation of the Privileges or Immunities Clause."[96] However, as the Fifth Circuit explained, the Privileges or Immunities Clause "protects only uniquely federal rights."[97] Plaintiff alleges a violation of a private right, namely, the "right to earn a living in a lawful occupation of one's choice."[98] This is not a "uniquely federal right[]." [99] Accordingly, the

---

[94] *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 760 (5th Cir. 1987) (citations omitted). *Accord Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 260 (7th Cir. 1995) ("Not since the *Slaughter–House Cases* has it been seriously maintained that the [F]ourteenth [A]mendment curtails the states' power to restrict competition in business—if they choose, by establishing and limiting systems of occupational licensure. The *Slaughter–House Cases* . . . dispatch any argument that the privileges [or] immunities clause entitled persons to conduct business free of regulation (there, of exclusion, for the state set up a monopoly).") (internal citations omitted).

[95] *Deubert*, 820 F.2d at 760. The Fifth Circuit did not foreclose the use of the Privileges or Immunities Clause to support a private cause of action in the future. *Id.*

[96] Rec. Doc. 1 at 19.

[97] *Deubert*, 820 F.2d at 760.

[98] Rec. Doc. 1 at 19.

[99] *See, e.g.*, *Merrifield v. Lockyer*, 547 F.3d 978, 983 (9th Cir. 2008) ("However, the Court made it very clear that the traditional privileges and immunities of citizenship 'which are, in their nature, fundamental; which belong, of right, to the citizens of all free governments,' *such as the right to engage in one's profession of choice*, were not protected by the Privileges or Immunities Clause if they were not of a 'federal' character." (emphasis added) (citing *Corfield v. Coryell*, 6 F. Cas. 546, 551–52 (C.C. E.D. Pa. 1823)).

Court finds that Plaintiffs have not stated a claim against Defendants under the Privileges or Immunities Clause of the Fourteenth Amendment to the United States Constitution.

### D. Whether Plaintiffs' Claims under the Louisiana Constitution Should Be Dismissed

Defendants move to dismiss Plaintiffs' claim under the due process guarantee of the Louisiana Constitution on the basis that it duplicates their federal due process claim.[100] Additionally, Defendants move to dismiss Plaintiffs' claim under the equal protection guarantee on the basis that it furthers the State's legitimate interest in consumer protection.[101] In opposition, Plaintiffs contend that Louisiana's due process guarantee requires a challenged law to have a "real and substantial" relationship to the general welfare, which Plaintiffs assert the FNR requirement lacks.[102] Plaintiffs further contend that the statute "affects a suspect class" and should be subject to intermediate scrutiny under the Louisiana constitution's equal protection guarantee.[103] The Court addresses each of these arguments in turn.

**1. Due Process Clause**

Plaintiffs allege a violation of the Louisiana Constitution's due process guarantee.[104] Louisiana's due process guarantee "does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution."[105] Given that the protections afforded by the Louisiana Constitution's due process provision and the Due Process Clause of the United States

---

[100] Rec. Doc. 31-1 at 22.

[101] *Id.*

[102] Rec. Doc. 33 at 18–19.

[103] *Id.* at 20.

[104] Rec. Doc. 1 at 19–20.

[105] *Progressive Sec. Ins. Co. v. Foster*, No. 97-2985, p. 22 (La. 1998); 711 So. 2d 675, 688. *See also Theriot v. Terrebonne Par. Police Jury*, 436 So. 2d 515, 520 (La. 1983).

Constitution are the same, a separate analysis of the state due process guarantee claim is not necessary. For the reasons set forth above, the Court will deny Defendants' motion to dismiss Plaintiffs' due process claim under the Louisiana Constitution.

### 2. Equal Protection Clause

Plaintiffs also bring a claim under the Louisiana Constitution's equal protection guarantee.[106] Unlike Louisiana's due process guarantee, the state's equal protection guarantee is not coextensive with the federal Equal Protection Clause.[107] Instead, Louisiana courts apply three levels of scrutiny to equal protection claims:

> (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.[108]

In opposition to the motion to dismiss, Plaintiffs assert that intermediate scrutiny applies because "the challenged law applies to providers of care to special needs children."[109]

The Court disagrees. As an initial matter, Plaintiffs did not allege that the law discriminates on the basis of disability in their complaint.[110] "A plaintiff may not amend [its] complaint in [its] response to a motion to dismiss."[111] And, in any event, the law at issue here is

---

[106] Rec. Doc. 1 at 20–22.

[107] *Sibley v. Bd. of Supervisors of La. State Univ.*, 477 So. 2d 1094, 1107 (La. 1985).

[108] *Id.* (internal citations omitted).

[109] Rec. Doc. 33 at 21.

[110] *See* Rec. Doc. 1 at 20–22.

[111] *Mun. Emps.'s Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 436 (5th Cir. 2019) (alterations in

facially neutral. Plaintiffs contend that "the challenged law applies to providers of care to special needs children."[112] However, providers of care to special needs children are not a suspect classification under the standard. Thus, the third tier of scrutiny applies.

Nevertheless, under this tier of scrutiny, the Court finds Plaintiffs have plausibly alleged that the law "does not suitably further any appropriate state interest."[113] Plaintiffs assert that the "FNR requirement draws an arbitrary and irrational distinction" that excludes qualified providers, artificially limits supply, "increases costs, jeopardizes public health and safety, and decreases access to care."[114] In support, Plaintiffs allege the Department has "no formal factors" to determine whether to approve or reject an applicant.[115] Plaintiffs contend this leads to a "shortage of care and insulates existing providers from competition" allowing those providers "to charge higher prices and deliver lower-quality services."[116] Additionally, Plaintiffs aver there is a demonstrated need for additional care because they "receive calls on a weekly basis asking when they will begin to operate."[117] Therefore, accepting all of Plaintiffs' well-pleaded facts as true, they have stated a claim against Defendants. Accordingly, the Court will deny the Defendants' motion to dismiss to the extent it seeks dismissal of the Plaintiffs' state constitutional equal protection claim.

---

original) (quoting *Lohr v. Gilman*, 248 F. Supp. 3d 796, 810 (N.D. Tex. 2017)).

[112] Rec. Doc. 33 at 21.

[113] *Sibley*, 477 So. 2d at 1107.

[114] Rec. Doc. 1 at 21.

[115] *Id.* at 8.

[116] *Id.* at 13.

[117] *Id.*

## V. Conclusion

For the foregoing reasons, the Court finds that Plaintiffs have stated a claim that the FNR process violates the Equal Protection Clause and the Due Process Clause of the United States Constitution, as well as the due process and equal protection provisions of the Louisiana Constitution. However, the Court finds that Plaintiffs have not stated a claim under the Privileges or Immunities Clause of the Fourteenth Amendment. Accordingly,

**IT IS HEREBY ORDERED** that "Defendants' Motion to Dismiss Plaintiffs' Original Complaint" is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED** to the extent Defendants seek dismissal with prejudice of Plaintiffs' claim under the Privileges or Immunities Clause of the Fourteenth Amendment.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA**, this 30th day of July, 2021.

*[Signature: Nannette Jolivette Brown]*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**