## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**URSULA NEWELL-DAVIS et al.**                **CIVIL ACTION**

**VERSUS**                                     **CASE NO. 21-49**

**COURTNEY N. PHILLIPS et al.**                **SECTION: "G"(1)**

### ORDER AND REASONS

This litigation concerns a Fourteenth Amendment challenge to a state law economic regulation.[1] Plaintiffs Ursula Newell-Davis ("Newell-Davis") and Sivad Home and Community Services, LLC ("Sivad Home") (collectively, "Plaintiffs") challenge the constitutionality of "Facility Need Review" ("FNR") regulations pertaining to respite service providers, as codified at Louisiana Revised Statute § 40:2116 and Louisiana Administrative Code title 48, §§ 12503(C)(2), 12523 *et seq.*[2] Plaintiffs bring suit against Courtney N. Phillips in her official capacity as Secretary of the Louisiana Department of Health (the "LDH"), Ruth Johnson in her official capacity as the Undersecretary of the LDH, Julie Foster Hagan in her official capacity as Assistant Secretary of the LDH's Office for Citizens with Developmental Disabilities, Cecile Castello in her official capacity as Health Standards Section Director of the LDH, and Dasiny Davis in her official capacity as Facility Need Review Program Manager for the LDH (collectively, "Defendants").[3] Pending before the Court are cross-motions for summary judgment filed by the parties.[4]

---

[1] Rec. Doc. 1. Plaintiffs also assert analogous state law constitutional challenges. *Id.*

[2] *Id.*

[3] *Id.* at 4–5.

[4] Rec. Docs. 73, 78.

1

Under the Fourteenth Amendment, a state law economic regulation will be upheld if it "bear[s] a rational relation to a legitimate governmental purpose."[5] For the reasons explained below, the Court finds that FNR is rationally related to the legitimate interest of enhancing consumer welfare. Therefore, considering the cross-motions, the memoranda in support and in opposition, the record, and the applicable law, the Court grants Defendants' motion for summary judgment. The Court denies Plaintiffs' motion for summary judgment.

## I. Background

On January 12, 2021, Plaintiffs filed a complaint in this Court.[6] According to the Complaint, Newell-Davis founded Sivad Home to provide respite care for special needs children and their families.[7] Plaintiffs aver that to provide such respite services, they must participate in the "Facility Need Review" program with the LDH prior to becoming eligible to apply for a license to operate.[8] Plaintiffs allege that in 2019, Newell-Davis submitted an application for FNR approval in which she included "statistical data that showed . . . a need for services aimed at supervising and caring for young people," descriptions of conversations with local public figures, and citations to studies showing that "respite care can lead to better outcomes for both children and their family members."[9] Yet Plaintiffs aver that the LDH denied Plaintiffs' FNR application on February 19, 2020 for "failure to demonstrate there was a need for additional respite care

---

[5] *Duarte v. City of Lewisville*, 858 F.3d 348, 354 (5th Cir. 2017) (citing *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995)).

[6] Rec. Doc. 1.

[7] *Id.* at 1.

[8] *Id.* at 2.

[9] *Id.* at 9–10.

business in the proposed service area."[10] Plaintiffs claim that they "are unable to lawfully provide respite care as a home and community-based provider in Louisiana because they have not obtained FNR approval."[11]

Plaintiffs contend that FNR "has no rational relationship to any legitimate government interest" and "[b]y reducing the number of respite care providers, the FNR requirement jeopardizes the health and safety of . . . special needs children."[12] Plaintiffs allege violations of the Due Process Clause, the Equal Protection Clause, . . . as well as the due process and equal protection provisions of Article I of the Louisiana Constitution.[13] Plaintiffs seek declaratory and injunctive relief.[14]

On January 4, 2022, Defendants filed the instant motion for summary judgment.[15] Plaintiffs filed their opposition on February 1, 2022.[16] On January 6, 2021, Plaintiffs filed a cross-motion for summary judgment.[17] On February 1, 2022, Defendants filed their opposition to Plaintiffs' cross-motion.[18] On February 11, 2022, with leave of Court, Plaintiffs filed a reply brief in further

---

[10] *Id.* at 10.

[11] *Id.* at 14.

[12] *Id.* at 13.

[13] *Id.* at 15–22. *See* U.S. Const. amend. XIV, § 1; La. Const. art. I, §§ 2, 3. Plaintiffs also asserted claims under the Privileges or Immunities Clause of the Fourteenth Amendment. *See* Rec. Doc. 1 at 18–19. On August 2, 2021, the Court granted in part Defendants' motion to dismiss and dismissed Plaintiffs' privileges or immunities claims. Rec. Docs. 31, 45.

[14] Rec. Doc. 1 at 22–23.

[15] Rec. Doc. 73.

[16] Rec. Doc. 87.

[17] Rec. Doc. 78.

[18] Rec. Doc. 86.

support of their motion.[19]

## II. Parties' Arguments

### A.   *Defendants' Motion for Summary Judgment*

#### 1.   **Defendants' Arguments in Support of the Motion for Summary Judgment**

Defendants move the Court to grant summary judgment in their favor dismissing all of Plaintiffs' claims.[20] Defendants submit that there is no material factual dispute that FNR is rationally related to its legitimate purpose of enhancing consumer protection and welfare.[21]

Defendants argue that Plaintiffs cannot produce sufficient evidence to carry their "heavy burden" under rational basis review.[22] Under this standard, Defendants assert that FNR serves the legitimate purpose of enhancing consumer welfare.[23] Defendants note that although the United States Supreme Court "hardly ever strikes down a policy as illegitimate under rational basis scrutiny," a limited exception applies where "the laws at issue lack any purpose other than a bare desire to harm a politically unpopular group."[24] Here, Defendants assert that Plaintiffs' own expert "agreed during his deposition that FNR was not passed to harm any politically unpopular group."[25]

Defendants note that the Fifth Circuit recognizes an additional exception, holding that "pure economic protectionism is not by itself a legitimate state interest."[26] However, Defendants

---

[19] Rec. Docs. 94, 95.

[20] Rec. Doc. 73-1 at 1.

[21] *Id.*

[22] *Id.* at 8.

[23] *Id.* at 9.

[24] *Id.* (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018)).

[25] *Id.* (citing Rec. Doc. 73-17 at 13–14 (Mitchell Depo.)).

[26] *Id.* at 9–10 (emphasis omitted) (quoting Rec. Doc. 45 at 10).

assert that protecting a particular industry "is not itself an illegitimate interest when protection of the industry can be linked to advancement of the public interest or general welfare."[27] Here, Defendants contend that, even if it has protectionist elements, FNR advances the public interest by preserving LDH's resources and allowing LDH to "prioritize complaint surveys and relicensure surveys."[28]

Defendants argue that FNR is rationally related to enhancing consumer welfare.[29] Defendants contend that "factual disputes about whether a law is rationally related to its legitimate purpose are rarely material" because "the Fifth Circuit will sustain a rationale unless it rises to the level of fantasy."[30] Nevertheless, Defendants assert that "the record overwhelmingly shows" that FNR is rationally related to enhancing consumer welfare.[31] Defendants point to evidence that they contend demonstrates that FNR eases the administrative burden on LDH.[32] Defendants assert that this enhances LDH's "ability to supervise existing providers while responding to consumer concerns and needs appropriately."[33] Defendants aver that state and federal courts across the country have upheld similar laws challenged on due process and equal protection grounds "for a variety of reasons."[34] Moreover, Defendants assert that the democratic process is the

---

[27] *Id.* at 10 (emphasis omitted) (quoting *St. Joseph Abbey v. Castille*, 712 F.3d 215, 220 (5th Cir. 2013)).

[28] *Id.* at 10–11 (citing Rec. Doc. 73-5 at 3–7 (Castello Decl.); Rec. Doc. 73-19 at 11 (Castello Depo.)).

[29] *Id.* at 12.

[30] *Id.* (quoting *Glass v. Paxton*, 900 F.3d 233, 245 (5th Cir. 2018) (internal quotations omitted)).

[31] *Id.* at 13.

[32] *Id.* at 13–15.

[33] *Id.* at 16 (quoting Rec. Doc. 73-4 at 5 (Lutzky Report)).

[34] *Id.* at 17–18 (discussing *Women's Surgical Ctr., LLC v. Berry*, 806 S.E. 2d 606, 612–13 (Ga. 2017); *Colon Health Ctrs. of Am., LLC v. Hazel*, 733 F.3d 535, 548 (4th Cir. 2013); *Madarang v. Bermudes*, 889 F.2d 251, 253 (9th Cir. 1989); *Planned Parenthood of Greater Iowa, Inc. v. Atchison*, 126 F.3d 1042, 1048 (8th Cir. 1997); *Women's Cmty. Health Ctr. v. Tex. Health Facilities Comm'n*, 685 F.2d 974 (5th Cir. 1982); *Metro. Hosp. v. Thornburgh*, 667

constitutionally appropriate method of "rectifying any perceived problems of FNR."[35]

Next, Defendants argue that "Plaintiffs have been unable to produce even a scintilla of evidence demonstrating that FNR harms consumers."[36] Defendants assert that the report of Plaintiffs' expert Dr. Timmons is methodologically unsound.[37] And Defendants contend that Plaintiffs' expert Dr. Mitchell addressed certificate of need laws, "and did not discuss FNR directly."[38]

Finally, Defendants argue that Plaintiffs' state law claims fail for the same reasons.[39] First, Defendants assert that Plaintiffs' state law due process claims fail because the Louisiana and federal due process guarantees are identical.[40] Second, Defendants note that Louisiana's equal protection guarantee differs from the federal guarantee.[41] However, Defendants assert that under Louisiana law, when "an economic regulation is challenged as violating the equal protection clause, [a] court may not sit as a super-legislature" and that "it is only the invidious discrimination, the wholly arbitrary act, which cannot stand."[42] Defendants aver that "the record overwhelmingly

---

F. Supp. 208 (E.D. Pa. 1987)).

[35] *Id.* at 18–19 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

[36] *Id.* at 19.

[37] *Id.* at 19–21. Defendants filed a *Daubert* motion to exclude Dr. Timmons' report for the same reasons. *See* Rec. Doc. 64.

[38] Rec. Doc. 73-1 at 21.

[39] *Id.* at 24.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 25 (emphasis omitted) (quoting *Lakeside Imps., Inc. v. State*, 94-0191 (La. 7/5/94); 639 So. 2d 253, 257).

shows that Louisiana's FNR program is neither invidious discrimination nor wholly arbitrary."[43] Thus, Defendants assert that the Court should grant summary judgment in their favor and dismiss all of Plaintiffs' claims.[44]

### 2. Plaintiffs' Arguments in Opposition to the Motion for Summary Judgment

In opposition, Plaintiffs argue that administrative convenience is not a legitimate purpose for FNR.[45] Plaintiffs assert that "administrative ease" is "an end unto itself, [because] doing so supposedly always benefits the public."[46] Plaintiffs argue that "if [administrative ease] were enough to satisfy the rational basis requirement, then literally every regulation limiting economic activity would have to be upheld."[47]

Next, Plaintiffs argue that even if administrative ease were a legitimate purpose, Defendants have not provided evidence to show that FNR advances that purpose.[48] Plaintiffs assert that Defendants offer no evidence quantifying the cost or burden of conducting initial, complaint, or relicensure surveys.[49] Plaintiffs further assert that Defendants have offered no evidence that their "budget is fixed and would not be adjusted if [their] workload grew."[50]

Additionally, Plaintiffs contend that FNR is not a rational means for furthering Defendants'

---

[43] *Id.*

[44] *Id.*

[45] Rec. Doc. 87 at 2.

[46] *Id.* at 3.

[47] *Id.* at 4.

[48] *Id.* at 6.

[49] *Id.*

[50] *Id.*

asserted interest of administrative convenience.[51]  Plaintiffs assert that FNR does not consider LDH's budget or resources, the effect of a prover on LDH's workload, or the effect of a provider on the number of complaints.[52] Therefore, Plaintiffs assert that FNR is not rationally related to administrative convenience.[53]

Plaintiffs next argue that Defendants are "wrong" to suggest that the Court must defer to the legislature.[54] Plaintiffs aver that need review laws, like FNR, are "often applied in ways that favor entrenched business interests."[55] Plaintiffs assert that the due process and equal protection guarantees are designed to provide individuals with less political influence "a means to vindicate their rights when the legislative process fails them and is harnessed in favor of the politically powerful."[56] Plaintiffs urge the Court not to "abdicate" its "duty to protect people who lack the political power . . . to protect their own rights from exploitation by the majority."[57]

Plaintiffs assert that FNR is irrational on its face, "because its requirements have nothing to do with health or safety."[58] Plaintiffs also point to the report of their expert, Dr. Mitchell, who "was unable to find even one study that concluded that need review improves quality of care outside of highly technical fields."[59]

---

[51] *Id.* at 7.

[52] *Id.*

[53] *Id.*

[54] *Id.* at 8.

[55] *Id.* at 9.

[56] *Id.*

[57] *Id.* at 10.

[58] *Id.*

[59] *Id.* at 12 (emphasis omitted).

**B.      *Plaintiffs' Cross-Motion for Summary Judgment***

## 1.  Plaintiffs' Arguments in Support of the Cross-Motion for Summary Judgment

In their cross-motion, Plaintiffs move the Court to grant summary judgment and find that FNR violates their right to due process and equal protection as a matter of law.[60] Plaintiffs argue that FNR denies Plaintiffs due process of law because "it lacks a rational relationship to any legitimate governmental end."[61] Plaintiffs assert that administrative ease is not a legitimate state interest because laws that restrict entry into a trade necessarily lessen the administrative burden of regulating that trade.[62]

Plaintiffs also assert that FNR "lacks a rational relationship to improving access, reducing costs, or increasing the quality of care."[63] As to improving access, Plaintiffs point to one study that they assert shows that there are fewer "home health service[]" providers in states that have need review regulations compared to states that do not have such regulations.[64] Plaintiffs further assert that home health services are sufficiently analogous to respite care services.[65] Plaintiffs point to testimony from various witnesses that "there's always a need" for more providers.[66] Plaintiffs also contend that the report of Defendants' expert Dr. Lutzky supports their position that FNR limits access to care.[67] In that report, Plaintiffs assert that Dr. Lutzky conducted a survey and found that,

---

[60] Rec. Doc. 78-1 at 1–3.

[61] *Id.* at 9.

[62] *Id.* at 12.

[63] *Id.* at 13.

[64] *Id.* at 13–14.

[65] *Id.* at 13.

[66] *Id.* at 14 (quoting Rec. Doc. 78-9 at 32–33 (Davis Depo)).

[67] *Id.* at 15.

of the respite care providers in the New Orleans region, "36% of providers cannot be reached [, 14%] have disconnected phone lines, and 21% do not have voicemail set up or did not return calls."[68] Plaintiffs assert the report also found that "44% of licensees . . . are either not accepting new clients or are only accepting clients in a limited capacity."[69] Plaintiffs argue this demonstrates that LDH "has been rejecting applicants based on a misunderstanding of the active number of providers in Louisiana."[70]

Regarding reducing costs, Plaintiffs assert that the regulation is facially unrelated to costs or spending, and that LDH acknowledges that cost containment is not a consideration in FNR.[71] Plaintiffs also argue that "[b]asic economics predicts that restricting competition will tend to increase . . . costs."[72] Finally, Plaintiffs contend that FNR is not rationally related to improving quality of care.[73] Plaintiffs assert that the regulation is facially unrelated to quality of care.[74] Further, Plaintiffs point to their expert, Dr. Mitchell's, report which they assert "shows that need review tends to harm, not help, the public."[75] Plaintiffs explain that Dr. Mitchell's report reviewed "25 papers examining the link between need review and quality."[76] Plaintiffs assert that most of

---

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.* at 16.

[72] *Id.*

[73] *Id.* at 17.

[74] *Id.*

[75] *Id.*

[76] *Id.*

the studies Dr. Mitchell reviewed found no effect, mixed results, or negative effects on quality.[77] Plaintiffs distinguish the three papers that found a positive effect by explaining that those papers concerned "highly technical fields."[78] Plaintiffs also assert that one study demonstrates "that Louisiana recipients of respite care are less satisfied with their care than residents of other states."[79] Plaintiffs aver that Defendants have produced no evidence to demonstrate that FNR improves quality.[80] Therefore, Plaintiffs contend that FNR violates their "right to due process as a matter of law" because it "lacks a rational relationship to any legitimate state interest."[81]

As to their equal protection claims, Plaintiffs argue that FNR irrationally treats them differently from others similarly situated.[82] Plaintiffs assert that "FNR sets up a wholly irrational distinction between who may offer respite services and who may not."[83] Plaintiffs also contend that FNR allows the state to show favoritism to incumbent business, which Plaintiffs submit is "economic protectionism" and not a "legitimate governmental end."[84]

Finally, Plaintiffs address their state law claims.[85] First, Plaintiffs argue that FNR violates the Louisiana constitution's due process guarantee for the same reasons expressed above.[86]

---

[77] *Id.* at 17–18.

[78] *Id.*

[79] *Id.* at 18.

[80] *Id.* at 22.

[81] *Id.*

[82] *Id.*

[83] *Id.* at 23.

[84] *Id.*

[85] *Id.*

[86] *Id.* (noting that because "Plaintiff[s'] state due process claim[s are] subject to rational basis scrutiny . . . the same arguments . . . apply").

Second, Plaintiffs assert that Louisiana's equal protection guarantee "provides more protection than its federal counterpart."[87] Plaintiffs contend that Louisiana's intermediate scrutiny applies.[88] Plaintiffs assert that Louisiana courts apply heightened scrutiny where a statute makes it more difficult for disabled persons to enjoy an important right.[89] Plaintiffs aver that FNR makes it more difficult to enjoy an important right, and therefore intermediate scrutiny should apply.[90] Plaintiffs also assert that the law is not facially neutral because "it applies only to the care of disabled individuals and the elderly."[91] No matter the scrutiny, Plaintiffs assert that FNR fails because it "can't even satisfy" rational basis review.[92] Therefore, Plaintiffs urge the Court to grant summary judgment in their favor.[93]

### 2. Defendants' Arguments in Opposition to the Cross-Motion for Summary Judgment

Defendants oppose Plaintiffs' cross-motion.[94] Defendants contend that Plaintiffs have not produced any "reliable evidence measuring FNR's effects on respite care consumers in Louisiana" and thus have not met their "heavy burden" under rational basis review.[95]

Defendants argue that Plaintiffs have no evidence showing that FNR has an improper

---

[87] *Id.* at 24.

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.* at 25.

[92] *Id.* at 25.

[93] *Id.*

[94] Rec. Doc. 86.

[95] *Id.* at 1.

purpose.[96] Defendants point to record evidence that "FNR was passed for the legitimate purpose of enhancing consumer protection and welfare."[97] Defendants aver that Plaintiffs have provided no evidence to rebut that purpose.[98] Instead, Defendants assert that Plaintiffs construe FNR's purpose as "administrative ease."[99] Defendants assert that this contention is "pure argument," "founded on nothing in the record," and thus is insufficient to carry Plaintiffs' burden under Rule 56.[100] Moreover, Defendants contend that Plaintiffs' argument is "irrelevant" because "the Court could hypothesize a legitimate purpose not even suggested by the State."[101] Nevertheless, Defendants explain that "FNR's purpose was to limit the number of unnecessary providers and thereby give LDH the ability to focus its time and resources on conducting complaint surveys and relicensure surveys that enhance consumer welfare."[102]

Next, Defendants reiterate their arguments that "the Supreme Court 'hardly ever strikes down a policy as illegitimate under rational basis scrutiny.'"[103] Defendants re-assert that the limited exception—where a law was based out of a "bare desire to harm a politically unpopular group"—is inapplicable here.[104] And Defendants re-iterate that FNR is not "pure

---

[96] *Id.* at 2.

[97] *Id.* (citing Rec. Docs. 73-4 (Lutzky Rep.); 73-5 (Castello Decl.); 73-19 (Castello Depo.)).

[98] *Id.* at 3.

[99] *Id.* (citing Rec. Doc. 78 at 12).

[100] *Id.* at 3.

[101] *Id.* (citing *Hines v. Quillivan*, 982 F.3d 266, 274 (5th Cir. 2020)).

[102] *Id.* at 4. Defendants also assert that the United States Supreme Court upheld a city's tax scheme where the scheme eased "an administrative burden." *Id.* (quoting *Armour v. City of Indianapolis*, 566 U.S. 673, 686 (2012)).

[103] *Id.* (quoting *Trump*, 138 S. Ct. 2392, 2420 (2018)).

[104] *Id.*

protectionism."[105]

Defendants argue that the Court can conclude that FNR is rationally related to enhancing consumer welfare.[106] Defendants assert that Plaintiffs' burden is to show not just that FNR is economic protectionism, but that it also harms consumers.[107] Moreover, Defendants aver that they are "not required 'to produce evidence to sustain the rationality of a statutory classification.'"[108] Rather, Defendants argue that Plaintiffs must "produce[] sufficient evidence to negate any and every basis that could rationally support FNR."[109] Defendants contend that, even if FNR has protectionist elements, Plaintiffs have produced no evidence that it harms consumers.[110]

Defendants assert that Plaintiffs' evidence does not demonstrate that FNR has a negative effect on consumers.[111] Defendants note that Plaintiffs address three categories of FNR's effects: (1) access to care, (2) cost of care, and (3) quality of care.[112] Regarding access to care, Defendants assert that Plaintiffs gathered no information from providers about whether they were accepting new clients; "[o]nly Defendants' expert, Dr. Lutzky, performed that analysis."[113] Defendants explain that Dr. Lutzky found that consumers had "a fair number of choices" and concluded that

---

[105] *Id.* at 5.

[106] *Id.*

[107] *Id.* at 5–6.

[108] *Id.* at 6 (quoting *Hines*, 982 F.3d at 273–74 (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993))).

[109] *Id.*

[110] *Id.* at 7.

[111] *Id.*

[112] *Id.*

[113] *Id.*

FNR is an effective tool.[114] Defendants also note that Dr. Lutzky conducted this survey shortly after Hurricane Ida and nevertheless concluded that access to care was "positive" compared to other states.[115] Defendants contrast this report with that of Plaintiffs' expert, Dr. Mitchell.[116] Defendants point out that Dr. Mitchell's report concerned certificate of need laws generally and did not address Louisiana specifically.[117] Moreover, Defendants assert that Louisiana is the only state in the country that applies need review to respite care providers.[118]

As to cost of care, Defendants aver that Plaintiffs have no evidence about FNR's effects on the price of respite care.[119] Defendants assert that Plaintiffs cite only to "basic economics" and Dr. Mitchell's report to support their allegation that FNR drives up prices.[120] Defendants reiterate that Dr. Mitchell's report did not consider "Louisiana's unique FNR program for respite care providers."[121] Although Defendants' expert did not analyze whether FNR had any impact on the price of respite care, Defendants aver that "Plaintiffs did not perform this analysis either."[122] Defendants note that "Plaintiffs acknowledge that perhaps 'need review has no effect on costs or spending.'"[123] Therefore, Defendants argue that "[b]ecause FNR is accorded a presumption of

---

[114] *Id.* at 7–8.

[115] *Id.* at 10.

[116] *Id.* at 8.

[117] *Id.*

[118] *Id.*

[119] *Id.* at 10.

[120] *Id.*

[121] *Id.*

[122] *Id.* at 11.

[123] *Id.* (quoting Rec. Doc. 78 at 17).

constitutionality, and the issue is at least debatable, Plaintiffs have failed to satisfy their heavy burden."[124]

Concerning quality of care, Defendants contend that the record shows FNR improves the quality of care.[125] Defendants explain that LDH periodically conducts quality control surveys to ensure that licensed providers meet the appropriate standards of care.[126] Defendants assert these surveys are "costly and time intensive—especially for providers who offer in-home services like respite care."[127] LDH also investigates complaints from consumers and conducts relicensure surveys.[128] Defendants argue that "[w]ithout FNR, [LDH] would be required to perform more initial licensing surveys of unnecessary providers," limiting LDH's ability to conduct quality control, complaint, and relicensure surveys.[129] Defendants point to their expert Dr. Lutzky's report wherein he "concluded that FNR is 'likely good for consumers' because '[b]y limiting the total number of providers, FNR allows LDH to dedicate more resources to weeding out sub-par or non-existent providers, responding to complaints accordingly, undertaking periodic inspections, and ensuring licensed providers are providing quality services.'"[130] In contrast, Defendants reiterate that Plaintiffs' expert Dr. Mitchell's report does not address Louisiana's FNR program, but rather considers other states' certificate of need laws in the home health service context.[131] Further,

---

[124] *Id.*

[125] *Id.*

[126] *Id.*

[127] *Id.*

[128] *Id.* at 12.

[129] *Id.* at 13.

[130] *Id.* (quoting Rec. Doc. 73-4 at 13).

[131] *Id.* at 14.

Defendants criticize Plaintiffs' expert Dr. Timmons' report for drawing conclusions from statistically insignificant data, applying circular reasoning, and cherry-picking data.[132]

Defendants argue that Plaintiffs' state law claims also fail.[133] Defendants assert that Plaintiffs' state law due process claims fail for the same reasons discussed above, because those claims are also subject to rational basis review.[134] In their motion for summary judgment, Plaintiffs contend that Louisiana's intermediate level of scrutiny applies to Plaintiffs' state law equal protection claims.[135] Defendants disagree for two reasons.[136] First, Defendants assert that this Court correctly concluded that the lowest level of scrutiny applies because FNR is facially neutral and Plaintiffs do not allege that FNR results in disparate treatment.[137] Second, Defendants argue that there is no third-party standing under Louisiana law.[138] Defendants contend that "[e]ven if Plaintiffs could somehow plausibly allege that FNR harms disabled people," Plaintiffs do not have standing to bring those claims.[139] Therefore, Defendants argue that Plaintiffs' state law equal protection claims "are subject to rational basis review exactly like [their] federal equal protection claims."[140] On that basis, Defendants assert that Plaintiffs' state law equal protection claims also

---

[132] *Id.* at 14–15. These arguments are also the basis for Defendants' *Daubert* motion to exclude Dr. Timmons' report. *See* Rec. Doc. 64.

[133] Rec. Doc. 86 at 20.

[134] *Id.*

[135] *See id. See also* Rec. Doc. 78-1 at 24–25.

[136] Rec. Doc. 86 at 20.

[137] *Id.* at 20–21.

[138] *Id.* at 21 (citing *Greater New Orleans Expressway Comm'n v. Olivier*, 2004-2147, p. 4 (La. 1/19/05); 892 So. 2d 570, 574).

[139] *Id.*

[140] *Id.* at 22.

fail for the reasons discussed above.[141]

### 3. Plaintiffs' Arguments in Further Support of the Cross-Motion for Summary Judgment

In further support, Plaintiffs assert that they need not "affirmatively" show that FNR is "intended to harm anyone" to overcome rational basis review.[142] Rather, Plaintiffs aver that they have satisfied the rational basis standard "[b]ecause FNR lacks any rational connection to a legitimate end."[143] Plaintiffs reiterate their argument that Defendants have presented no evidence to rebut Plaintiffs' evidence.[144] Plaintiffs assert that the evidence demonstrates FNR irrationally reduces access to care.[145] Plaintiffs contend that Defendants' own employees believe there is an "extreme shortage" in respite care providers.[146] Plaintiffs further contend that Defendants have "no evidence" to support their position that FNR improves quality of care.[147] Similarly, Plaintiffs argue that Defendants have produced no evidence that FNR improves prices or quality.[148]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[141] *Id.*

[142] Rec. Doc. 95 at 3.

[143] *Id.*

[144] *Id.*

[145] *Id.* at 4.

[146] *Id.*

[147] *Id.* at 5–6.

[148] *Id.* at 6–7.

a matter of law."[149] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[150] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[151] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[152] The nonmoving party may not rest upon the pleadings.[153] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[154]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[155] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the

---

[149] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[150] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[151] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[152] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[153] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[154] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[155] *Celotex*, 477 U.S. at 323.

opponent's claim or defense."[156] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[157]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[158] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[159] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

However, "where the movant bears the burden of proof at trial, the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial.'"[160] The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[161]

In addition, on cross-motions for summary judgment, a court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving

---

[156] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[157] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[158] *Little*, 37 F.3d at 1075 (internal citations omitted).

[159] *Morris*, 144 F.3d at 380.

[160] *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020).

[161] *Ridgeway v. Pfizer, Inc.*, No. 09-2794, 2010 WL 1729187, at *1 (E.D. La. Apr. 27, 2010) (Vance, J.).

party.[162] "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."[163] Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive.[164]

## IV. Analysis

Cross-motions for summary judgment are pending before the Court. Each party seeks summary judgment in their favor: Plaintiffs urge the Court to find that FNR is not rationally related to a legitimate governmental purpose; Defendants urge the Court to find that FNR is rationally related to a legitimate governmental purpose.[165] Both parties agree that there are no material factual disputes.[166] Instead, each party argues that they are entitled to judgment as a matter of law. The Court will address Plaintiffs' federal and state constitutional claims in turn.

### A.     *Federal Due Process and Equal Protection Claims*

Plaintiffs challenge Louisiana's FNR regulations on due process and equal protection grounds. As the Court explained in its Order granting in part and denying in part Defendants' motion to dismiss, these claims are both governed by the rational basis standard.[167] Given that the

---

[162] *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).

[163] *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).

[164] *Bricklayers Int'l Union of Am., Local Union No. 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).

[165] Rec. Docs. 73, 78.

[166] Rec. Doc. 73-1 at 7; Rec. Doc. 78-1 at 9; Rec. Doc. 86 at 2; Rec. Doc. 87 at 2. Additionally, the parties' proposed pretrial order lists no contested issues of fact and states that "[t]he parties generally agree that there are no contested issues of material fact." Rec. Doc. 106 at 13.

[167] Rec. Doc. 45 at 10, 14.

standard is identical for both claims,[168] the Court addresses them together.

Rational basis scrutiny requires that a law "bear a rational relation[ship] to a legitimate governmental purpose."[169] The deferential rational basis standard carries a "strong presumption" in favor of a law's validity.[170] Courts afford "wide latitude" to the decisions of state legislatures.[171] This is because "the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one."[172] Those challenging a legislative classification must "negative every conceivable basis which might support it."[173] Moreover, a state "has no obligation to produce evidence to sustain the rationality of a statutory classification."[174] Indeed, "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."[175]

The Court finds that FNR's purpose is a legitimate government interest. Under the deferential rational basis standard, the Court need not determine the actual purpose of a law.[176]

---

[168] *See FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) ("[G]overnment action comports with substantive due process if the action is rationally related to a legitimate government interest."); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 350 (5th Cir. 2013) ("If a law does not implicate . . . a protected right or class, then it need only be rationally related to a legitimate government interest to survive an equal protection challenge.").

[169] *Duarte*, 858 F.3d at 354 (citing *Richard*, 70 F.3d at 417).

[170] *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993).

[171] *Duarte*, 858 F.3d at 354.

[172] *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 314 (1976).

[173] *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973).

[174] *Heller*, 509 U.S. at 320.

[175] *Beach Commc'ns, Inc.*, 508 U.S. at 315.

[176] *Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.3d 921, 936 (5th Cir. 2015).

Instead, if the Court is able to "hypothesize a legitimate purpose," the law will be sustained.[177] Here, FNR regulations require an applicant seeking a home and community-based service ("HCBS") provider license to first establish that "there is a need for an additional HCBS provider in the geographic location for which the application is submitted."[178] After making this showing, an applicant proceeds to the initial licensing survey and must meet stringent licensing standards.[179] These initial licensing surveys are "resource intensive and costly."[180] Once a provider is licensed, the Department "conducts periodic licensing surveys . . . to ensure client health, safety and welfare."[181] Therefore, FNR enhances consumer welfare by allowing the Department to prioritize these post-licensure compliance surveys that "ensure client health, safety and welfare," over the "resource intensive and costly" initial licensing surveys.[182] It is well established that the States have broad police powers "to protect the lives, health, morals, comfort and general welfare of the people."[183] Enhancing consumer welfare is plainly aimed at "protect[ing] the lives, health . . . and general welfare of the people" and is, therefore, a legitimate governmental purpose.[184]

Plaintiffs attempt to construe the purpose of FNR as "economic protectionism."[185] Plaintiffs rely principally on *St. Joseph Abbey v. Castille*, wherein the United States Court of

---

[177] *Id.* at 934.

[178] La. Admin. Code tit. 48, § 12523(C)(1).

[179] *Id.* §§ 5001(A), (C)(4), (C)(6), (D)(1)(b)–(c); 5005; 5007.

[180] Rec. Doc. 73-4 at 6.

[181] La. Admin. Code tit. 48, § 5017.

[182] *Id.*; Rec. Doc. 73-4 at 6.

[183] *Manigault v. Springs*, 199 U.S. 473, 480 (1905).

[184] *Id.*

[185] *See* Rec. Doc. 78-1 at 23.

Appeals for the Fifth Circuit held that pure economic protectionism is not by itself a legitimate state interest.[186] However, the Fifth Circuit went on to explain that even a law "protecting or favoring a particular intrastate industry" serves a legitimate interest "when protection of the industry can be linked to advancement of the public interest or general welfare."[187]

*St. Joseph Abbey* is easily distinguishable. In that case, the Fifth Circuit struck down a Louisiana state law that gave funeral homes the exclusive right to sell caskets.[188] Unlike the regulation at issue here, burials and caskets were utterly unregulated. Louisiana law did not require caskets for burials.[189] It imposed no requirements on the design or construction of caskets.[190] It did not require caskets be sealed.[191] Individuals could construct their own caskets or purchase them from out of state vendors.[192] And funeral directors were not required to have any special expertise in caskets in order to sell them.[193] Given the absence of any other regulations regarding the sale of caskets, the Fifth Circuit concluded that restricting the sale of caskets to funeral homes could not "be linked to advancement of the public interest or general welfare."[194]

By contrast, FNR can be linked to the advancement of consumer welfare. Unlike the funeral homes in *St. Joseph Abbey*, HCBS providers must meet many licensing requirements, including

---

[186] *St. Joseph Abbey*, 712 F.3d at 222–23.

[187] *Id.* at 222.

[188] *Id.* at 217–18.

[189] *Id.* at 218.

[190] *Id.* at 217.

[191] *Id.*

[192] *Id.*

[193] *Id.* at 226.

[194] *Id.* at 222–26.

passing a criminal background check and submitting proof of financial viability.[195] Further, HCBS providers seeking to provide in-home respite care services, like Plaintiffs, must meet additional requirements.[196] FNR allows LDH to focus on regulating already-licensed providers.[197] Although FNR seemingly protects incumbent providers, without it LDH would be forced to spend significantly more resources on the "resource intensive and costly" initial licensing surveys.[198] Therefore, even if FNR has protectionist elements, they "can be linked to advancement of the public interest or general welfare"[199] because LDH can conduct more complaint and relicensure surveys.

Next the Court finds that FNR is rationally related to advancing consumer welfare. "[R]ationality analysis requires more than just a determination that a legitimate state purpose exists; it also requires that the classification chosen by the state actors be rationally related to that legitimate state purpose."[200] However, "[a] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."[201] Nor must a state "produce evidence to sustain the rationality of a statutory classification."[202] Instead, a law with a legitimate purpose will stand so long as the question of a

---

[195] *See* La. Admin. Code tit. 48, § 5007.

[196] *Id.* § 5083.

[197] *See* Rec. 73-4 at 8.

[198] *Id.* at 6.

[199] *St. Joseph Abbey*, 712 F.3d at 222.

[200] *Mahone*, 836 F.2d at 937 (citing *City of Cleburne*, 473 U.S. at 447–50).

[201] *Heller*, 509 U.S. at 320.

[202] *Id.*

rational relationship is "at least debatable."[203]

On the record before the Court, FNR's rationality is "at least debatable."[204] Defendants' expert Dr. Lutzky found that, even with FNR, "LDH primarily reacts to problems rather than preventing them."[205] The Department testified that eliminating FNR would require additional unnecessary initial licensing surveys and limit LDH's ability to address complaint and relicensure surveys.[206] Dr. Lutzky also found that more than 50% of providers in Region 1—where Plaintiffs seek to provide services—are accepting new clients.[207] This suggests that FNR is serving its exact purpose. By requiring applicants to demonstrate a need for services in a particular geographic area, FNR allows LDH to limit the number of "resource intensive and costly" initial licensing surveys it must conduct.[208] If there is no demonstrated need for additional services, LDH can deny an application and avoid conducting an initial licensing survey. But FNR is responsive and flexible— when an applicant does demonstrate need, LDH can grant an application and proceed with the initial licensing survey. This flexibility bears a rational relationship to consumer welfare. LDH can add providers when consumers need additional services, and it can prioritize ensuring existing providers are providing quality services when the number of providers is adequate.

Additionally, Plaintiffs have not met their heavy burden to "negative every conceivable

---

[203] *W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 674 (1981) (quoting *United States v. Carolene Prods. Co.*, 304 U.S. 144, 154 (1938)).

[204] *Id.*

[205] Rec. Doc. 73-4 at 6.

[206] Rec. Doc. 73-19 at 67–68.

[207] Rec. Doc. 73-4 at 9.

[208] *Id.* at 6.

basis" which might support FNR.[209] Plaintiffs assert that FNR reduces access to care, drives up costs, and reduces quality of care.[210] In support, Plaintiffs principally rely on the expert opinion of Dr. Mitchell.[211] However, Dr. Mitchell's report reviewed certificate of need laws generally, not Louisiana's FNR law specifically.[212] Plaintiffs also point to an internal email between the Department and Magellan which they contend shows the Department "know[s] that need review tends to create shortages."[213] But the email actually demonstrates that the Department informed a provider that their FNR application would be denied "because there are many home health agencies in the area."[214] Moreover, Plaintiffs cite only to "basic economics" to support their contention that FNR drives up costs.[215] This "unsubstantiated assertion[]" is insufficient to carry Plaintiffs' burden on a motion for summary judgment,[216] let alone rational basis review.

Perhaps the legislature might have formulated a different and potentially more effective scheme. Unfortunately for Plaintiffs, the Supreme Court's mandate is clear: The Fourteenth Amendment does not empower federal courts "to sit as a superlegislature to weigh the wisdom of legislation."[217] Instead, "the Constitution presumes that even improvident decisions will eventually

---

[209] *Lehnhausen*, 410 U.S. at 364.

[210] Rec. Doc. 78-1 at 13.

[211] *See* Rec. Doc. 78-11.

[212] *Id.*

[213] Rec. Doc. 78-1 at 14.

[214] Rec. Doc. 78-3 at 217.

[215] Rec. Doc. 78-1 at 16.

[216] *Little*, 37 F.3d at 1075 (quoting *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994)).

[217] *Ferguson v. Skrupa*, 372 U.S. 726, 731 (1963) (quoting *Day-Brite Lighting, Inc., v. Missouri*, 342 U.S. 421, 423 (1952)) (cleaned up).

be rectified by the democratic process."[218] Even assuming FNR is an improvident method to achieve the State's aims, that is an issue for the legislature, not this Court, to rectify. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiffs' federal constitutional claims.

**B.    *State Law Due Process and Equal Protection Claims***

Plaintiffs assert analogous challenges under Louisiana's Constitution's due process and equal protection guarantees. As the Court explained in its Order granting in part and denying in part Defendants' motion to dismiss, Louisiana's due process guarantee "does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution."[219] Accordingly, Plaintiffs' state law due process claim fails for the same reasons explained above.

In that same Order, the Court explained that Louisiana's equal protection guarantee is not coextensive with the federal Equal Protection Clause.[220] Rather, Louisiana courts apply three tiers of scrutiny to equal protection clams. Applying Louisiana law, this Court held that Louisiana's lowest tier of scrutiny applied to Plaintiffs' state law equal protection claim.[221] In Plaintiffs' motion for summary judgment they re-argue that Louisiana's intermediate level of scrutiny applies.[222] Plaintiffs contend that, contrary to the Court's holding, FNR "is not facially neutral with regard to disability."[223] Plaintiffs assert that "[b]ecause FNR has a unique impact on the care of disabled

---

[218] *City of Cleburne*, 473 U.S. at 440.

[219] *Progressive Sec. Ins. Co. v. Foster*, No. 97-2985, p. 22 (La. 1998); 711 So. 2d 675, 688. *See also Theriot v. Terrebonne Par. Police Jury*, 436 So. 2d 515, 520 (La. 1983).

[220] *Sibley v. Bd. of Supervisors of La. State Univ.*, 477 So. 2d 1094, 1107 (La. 1985).

[221] Rec. Doc. 45 at 18.

[222] Rec. Doc. 78-1 at 24.

[223] *Id.* at 25.

children and adults, it should be subject to a higher level of scrutiny."[224]

The Court, again, disagrees. First, as the Court previously explained, FNR applies—on its face—to providers of care to special needs children. Providers of care are not a suspect classification under the standard.[225] Second, the standard under Louisiana law looks not to a law's impact, but to what "the law classifies."[226] Finally, Louisiana law does not recognize third party standing.[227] Even assuming FNR harms disabled people, Plaintiffs, as prospective providers of respite care, do not have standing to challenge the law on behalf of disabled persons. Accordingly, Louisiana's lowest tier of scrutiny applies.

Under this level of scrutiny, a law "shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest."[228] For the reasons explained above, Plaintiffs have not shown that FNR does not suitably further an appropriate state interest. Accordingly, Defendants are entitled to judgment as a matter of law.

### **V. Conclusion**

Considering the foregoing reasons, the Court finds that FNR survives rational basis scrutiny. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment[229] is

---

[224] *Id.*

[225] *See Sibley*, 477 So. 2d at 1107 (listing "birth, age, sex, culture, physical condition, or political ideas or affiliations" as classifications subject to tier-two scrutiny).

[226] *Id.*

[227] *See, e.g.*, *Greater New Orleans Expressway Comm'n*, 2004-2147 at p. 4; 892 So. 2d at 574 ("To have standing, a party must complain of a constitutional defect in the application of the statute to him or herself, not of a defect in its application to third parties in hypothetical situations." (quotation omitted)).

[228] *Sibley*, 477 So. 2d at 1107.

[229] Rec. Doc. 73.

GRANTED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment[230] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this  21st  day of March, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[230] Rec. Doc. 78.